Filed 8/27/18

# IN THE SUPREME COURT OF CALIFORNIA

| | | |
|---|---|---|
| THE PEOPLE, | ) | |
| | ) | |
| Plaintiff and Respondent, | ) | |
| | ) | S240044 |
| v. | ) | |
| | ) | Ct.App. 3 C078960 |
| CRAIG DANNY GONZALES, | ) | |
| | ) | Sacramento County |
| Defendant and Appellant. | ) | Super. Ct. No. 03F07705 |
| _____ | ) | |

Forgery is a "wobbler" crime punishable either as a felony or a misdemeanor. (Pen. Code, § 473, subd. (a).)[1] When voters enacted Proposition 47, the Penal Code gained a new provision reducing punishment to a misdemeanor for "forgery relating to a check, bond, bank bill, note, cashier's check, traveler's check, or money order, where the value of the check, bond, bank bill, note, cashier's check, traveler's check, or money order does not exceed nine hundred fifty dollars ($950)." (§ 473, subd. (b).) But forgery remains a wobbler — and therefore an offense ineligible for reclassification as a misdemeanor under Proposition 47 — for "any person who is convicted both of forgery and of identity theft, as defined in Section 530.5." (*Ibid.*) In this case we decide what relationship, if any, must exist between a person's convictions for forgery and identity theft for the identity theft conviction to result in denial of the relief an

---

[1] All subsequent statutory citations are to the Penal Code, unless otherwise noted.

1

SEE CONCURRING OPINION

individual could otherwise receive under Penal Code section 473, subdivision (b) (hereafter section 473(b)).

In a single consolidated proceeding, defendant Craig Danny Gonzales pleaded guilty to multiple offenses stemming from three different cases, including four counts of check forgery arising from conduct that occurred in 2003 and one count of identity theft committed in 2006. After California voters enacted Proposition 47, Gonzales petitioned the trial court to reduce his forgery convictions to misdemeanors under new procedures contained in section 473(b). The trial court denied his petition, but the Court of Appeal reversed, holding that section 473(b) precludes relief only if an identity theft offense is "transactionally related" to a forgery conviction. (*People v. Gonzales* (2016) 6 Cal.App.5th 1067, 1069 (*Gonzales*).)

We agree with the Court of Appeal's decision to reverse. The terms of section 473(b), the statute's overall structure, and the light these shed on the statute's purpose indicate that a connection between "both" the forgery and identity theft convictions must exist to disqualify an offender from resentencing. (§ 473(b).) To the extent the precise meaning of the statute's terms is somewhat ambiguous, the extrinsic evidence confirms the electorate's intended purpose in approving Proposition 47 was to require that the conduct related to the forgery and identity theft convictions must have been made "in connection with" each other to preclude Gonzales from resentencing. (*Gonzales*, *supra*, 6 Cal.App.5th at p. 1073.)

Here, Gonzales's forgery convictions were based on conduct committed in 2003, and his identify theft conviction was based on conduct committed in 2006 and 2007. Because his offenses were entirely unrelated and therefore not subject to exclusion under section 473(b), we conclude that Gonzales is eligible for

resentencing.  We affirm the Court of Appeal and remand the matter back to the trial court for further proceedings consistent with this opinion.

**I.**

On September 9, 2003, law enforcement officers conducted a search of a van in which Gonzales was a passenger.  During the search, the officers located a wallet containing three counterfeit driver's licenses — each bearing a different name corresponding to Gonzales's photograph.  Also found in the wallet were counterfeit currency and checks in the names corresponding to those other identities.  Officers also discovered copies of receipts for purchased goods — some of which were purchased with checks corresponding to Gonzales's counterfeit licenses.  In addition, the vehicle search revealed a pouch containing four bags of methamphetamine, a gram scale, clear plastic bags, and two pipes.  A search of Gonzales's person uncovered another counterfeit driver's license bearing a fourth identity, which was also tied to certain checks used to make purchases of goods.

The Identity Theft Task Force investigated the matter and confirmed that Gonzales used counterfeit driver's licenses and checks to make purchases in July and September of 2003.  On July 2, 2004, Gonzales was arrested and released on bail, but he failed to appear for his jury trial that was scheduled to begin on October 19, 2010.  A bench warrant was issued for his arrest.

On November 1, 2005, law enforcement officers witnessed Gonzales walk from a motel parking lot into a room.  Officers arrested him and conducted a search of the motel room, seizing a bag of methamphetamine, cash, paperwork, and various drug paraphernalia.

Between December 22, 2005, and June 12, 2006, AT&T opened several accounts in Sacramento County — later determined to be fraudulent — relying on personal identifying information of six individuals.  In the course of investigating

3

these accounts, law enforcement officers uncovered a scheme in which Gonzales and his fellow inmate opened the fraudulent telephone accounts, enabling them to make free telephone calls from jail.

On April 12, 2006, a consolidated information was filed against Gonzales arising from the 2003 and 2005 incidents — the one arising from allegations involving forgery, theft, and drug charges stemming from the September 2003 search of Gonzales and the van (No. 03F07705); and the one (No. 05F09704) involving the two drug charges based on the November 2005 search of a hotel room connected with defendant. (See *Gonzales*, *supra*, 6 Cal.App.5th at pp. 1069-1070.) Gonzales was charged with a total of 13 offenses in the consolidated case.[2]

On July 13, 2007, while the consolidated matters in Nos. 03F07705 and 05F09704 were still pending, the district attorney filed a second information (No. 06F11190) charging Gonzales with five new offenses, including identity theft, stemming from his jailhouse conspiracy to obtain unauthorized phone services in the names of various individuals.

In a negotiated plea deal, Gonzales admitted to all charges alleged in the consolidated information (Nos. 03F07705 and 05F09704) and pleaded no contest to one count of identity theft stemming from the 2007 case (No. 06F11190) in exchange for a total maximum sentence of 20 years. On February 29, 2008, in a

---

[2]     Counts one, three, four, and five charged Gonzales with willfully making, forging, or passing a counterfeit check with intent to defraud. (§ 470, subd. (d).) Count two charged him with obtaining money by false pretenses. (§ 532, subd. (a).) Count six charged him with possession of blank checks with the intention of completing them. (§ 475, subd. (b).) Count seven charged Gonzales with making, passing, or uttering a check with intent to defraud. (§ 476.) Count eight charged him with possession of a falsified identification card. (§ 470b.) Counts nine and twelve charged him with possession of methamphetamine for sale. (Health & Saf. Code, § 11378.) Counts ten and eleven charged him with transportation or sale of methamphetamine. (Health & Saf. Code, § 11379, subd. (a).) Count 13 charged him with failing to appear. (§ 1320.5.)

4

single proceeding, the court denied probation and imposed a total term of 19 years eight months for all three cases, including 18 years four months for the 2003 (No. 03F07705) and 2005 (No. 05F09704) consolidated cases and a consecutive term of one year four months on the 2007 information (06F11190).

A few years later, in the November 2014 election, California voters enacted Proposition 47, the Safe Neighborhoods and Schools Act. (§ 1170.18; see *People v. Rivera* (2015), 233 Cal.App.4th 1085, 1089.) Proposition 47 downgrades several felonies and wobblers to misdemeanors and permits persons convicted of those felonies and wobblers serving felony sentences at the time the law took effect to have their offenses retroactively redesignated as misdemeanors under certain circumstances by filing a petition. (§ 1170.18, subds. (a), (f).)

Forgery is one of the offenses amended by Proposition 47. As a consequence of Proposition 47, forgery remains punishable as either a misdemeanor or a felony if the value of the instrument exceeds $950, or if the offender "is convicted both of forgery and of identity theft, as defined in Section 530.5." (§ 473, subds. (a), (b).)

On January 21, 2015, Gonzales filed a petition with the trial court requesting resentencing based on the enactment of Proposition 47. The trial court denied the request on March 13, 2015, by checking a box on a file form noting that the denial was based on the "[c]urrent conviction(s)." The court did not hold a hearing or take evidence in deciding the petition and offered no additional reasoning for its decision.

Gonzales appealed the trial court's decision, and the Court of Appeal reversed the order as to counts one and three through seven.[3] The Court of Appeal

---

[3]    The petition in this case was filed as to No. 03F07705. As noted above, that case consisted of a consolidated information along with No. 05F09704, with

5

thought it clear that the "convicted both of" language in section 473(b) applies only to the "identity theft that is committed in a transactionally related manner with the forgery of an instrument, and not where, as here, the identity theft occurred in an independent transaction that simply happened to be part of the same sentencing proceeding." (*Gonzales*, *supra*, 6 Cal.App.5th at p. 1073.) The Court of Appeal held that Gonzales's 2006 identity theft conviction was not a proper basis for the trial court's denial order as to certain counts in the 2003 and 2005 cases. The Court of Appeal therefore reversed the trial court's order denying relief under section 1170.18 as to counts one and three to seven, and remanded to the trial court for further proceedings to determine defendant's eligibility for relief on the affected counts. (*Gonzales*, at pp. 1073-1074.)

On February 15, 2017, we granted review on our own motion to resolve what relationship, if any, must exist between convictions for forgery and identity theft in order to exclude a forgery conviction from sentencing as a misdemeanor under section 473(b).

## II.

The scope of section 473(b) is a question of law, so we review the Court of Appeal's interpretation of Proposition 47 de novo. (*Apple Inc. v. Superior Court* (2013) 56 Cal.4th 128, 135.) Our interpretation of a ballot initiative is governed by the same principles that apply in construing a statute enacted by the Legislature. (*People v. Superior Court (Pearson)* (2010) 48 Cal.4th 564, 571 (*Pearson*).) We first look to "the language of the statute, affording the words their ordinary and usual meaning and viewing them in their statutory context." (*Alcala v. Superior Court* (2008) 43 Cal.4th 1205, 1216.) The words of a statute must be construed in context, keeping in mind the statutory purpose. (*Carmack v.*

No. 03F07705 designated as the lead case. Gonzales ultimately entered a plea in both the consolidated cases and in No. 06F11190.

6

*Reynolds* (2017) 2 Cal.5th 844, 849-850.) Our principal objective is giving effect to the intended purpose of the initiative's provisions. (*California Cannabis Coalition v. City of Upland* (2017) 3 Cal.5th 924, 933 [explaining that our "primary concern is giving effect to the intended purpose of the provisions at issue"].) If the provisions remain ambiguous after we consider its text and the statute's overall structure, we may consider extrinsic sources, such as an initiative's election materials, to glean the electorate's intended purpose. (*Larkin v. W.C.A.B.* (2015) 62 Cal.4th 152, 158 ["[W]e may look to various extrinsic sources . . . to assist us in gleaning the [voters'] intended purpose."].) Finally, we presume that the "adopting body" is aware of existing laws when enacting a ballot initiative. (*In re Lance W.* (1985) 37 Cal.3d 873, 890, fn. 11.)

Applying these principles, we conclude that Proposition 47's language and structure indicate that the provisions at issue require that a forgery and identity theft conviction be related to preclude resentencing. We also conclude that, in resolving that statute's textual ambiguity, the voters' intended purpose — as evidenced by the election materials — was indeed to bar from resentencing only those offenders whose conduct related to the forgery and identity theft convictions were made "in connection with" each other. We therefore affirm the Court of Appeal.

As enacted in Proposition 47, section 473(b) sets forth that "any person who is guilty of forgery . . . where the value of the [instrument] . . . does not exceed $950 . . . shall be punishable by imprisonment in a county jail for not more than one year, except that such person may instead be punished pursuant to subdivision (h) of Section 1170 if that person has one or more prior convictions for an offense specified in [Section 667, subdivision (e)(2)(C)(iv)] or for an offense requiring registration pursuant to [Section 290, subdivision (c)]." This subdivision reduces the punishment of forgery to a misdemeanor when the amount

7

in question does not exceed $950.  This subdivision also provides, however, that it "shall not be applicable to any person who is *convicted both of forgery and of identity theft*, as defined in Section 530.5."[4] (§ 473(b), italics added.)  Proposition 47 provides a mechanism by which a person currently serving a felony sentence for an offense that has been downgraded to a misdemeanor may petition for a recall of that sentence and request resentencing.  (§ 1170.18, subd. (a).)  An offender who satisfies the criteria set forth in subdivision (a) of section 1170.18 shall have their sentence recalled and be resentenced to a misdemeanor, unless the sentencing court determines that resentencing the petitioner would pose an unreasonable risk of danger to the public.  (*Id.*, subd. (b).)

The language of section 473(b) specifically precludes from eligibility for resentencing individuals who are convicted *both* of forgery and identity theft.  As used in this provision, the term "both" establishes that a relationship is necessary between a forgery and identity theft conviction to disqualify an offender from the benefit of having his or her sentence recalled.  Here, Gonzales was convicted and sentenced in a single, consolidated proceeding stemming from three different cases that included forgery and identity theft convictions.  But Gonzales's forgery conviction was based on acts committed in 2003, years apart from an identity theft

---

[4]     Section 530.5, subdivision (a) reads as follows:  "Every person who willfully obtains personal identifying information [name, address, telephone number, PIN number, etc.] of another person, and uses that information for any unlawful purpose . . . without the consent of that person, is guilty of a public offense, and upon conviction therefor, shall be punished by a fine, by imprisonment in a county jail not to exceed one year, or by both a fine and imprisonment . . . ."  Thus, the crime of identity theft requires that there be "another person," whereas the crime of forgery does not:  "Every person who possesses or receives, with the intent to pass or facilitate the passage or utterance of any forged, altered, or counterfeit items, or completed items . . . with intent to defraud, knowing the same to be forged, altered, or counterfeit, is guilty of forgery."  (§ 475, subd. (a).)

conviction based entirely on acts committed in 2006. It is uncontested that these offenses are not only years apart, but entirely unrelated. But the word "both" does not illuminate whether these convictions must be contemporaneous or concurrent, whether they include past convictions, or whether the acts supporting the convictions occurred during the same course of conduct.

The People argue that Gonzales is ineligible for resentencing because section 473(b) precludes the reduction of a forgery offense if an offender is *concurrently* convicted of both forgery and identity theft. Gonzales argues, however, that his forgery and identity theft convictions were not related because his forgery and identity theft offenses involved conduct that occurred at separate times. Specifically, Gonzales's identity theft conviction was based on conduct that occurred in 2006 and 2007, and his forgery convictions were based on conduct that occurred in 2003.

If we embraced the People's interpretation, Gonzales would be ineligible for resentencing simply because he was convicted and sentenced in a consolidated proceeding, whereas another defendant in a comparable situation would be eligible for resentencing if he were convicted in separate proceedings. Under the People's reading of the statute, had Gonzales been promptly tried and convicted of his forgery offenses in 2003 or 2004, he would be eligible for resentencing.[5] But merely because his charges were consolidated, he is ineligible for relief. Nothing in the statutory design suggests that Gonzales should be barred from relief under Proposition 47 simply because his convictions were consolidated and he was sentenced in a single proceeding.

---

[5] We note, however, that Gonzales failed to appear for his jury trial that was slated to begin in 2010. If Gonzales had appeared as he was required to do, his subsequent identity theft charges might not have been consolidated with his earlier forgery ones.

9

The Court of Appeal concluded that Proposition 47's language was ambiguous because of the word "both" and its placement in describing the circumstances in which an offender is ineligible for a sentence reduction, i.e., when an offender "is convicted *both* of forgery and of identity theft." (§ 473(b), italics added.) The court considered Proposition 47's election materials, and it determined that the intent of the voters was to bar offenders from resentencing only when forgery and identity theft convictions were "transactionally related." (*Gonzales*, *supra*, 6 Cal.App.5th at p. 1073.) In so concluding the Court of Appeal reversed the trial court and held that Gonzales was indeed eligible for resentencing under the new subdivision (b) added to section 473 by Proposition 47. (*Gonzales*, at p. 1073.)

As we explain below, use of the present tense in the statutory provisions at issue, along with use of the word "both" in the context of a remedial statute (see *People v. Dehoyos* (2018) 4 Cal.5th 594, 597-599 [describing remedial objectives of Proposition 47]), strongly suggest the two convictions must have some connection with each other. Nonetheless, we acknowledge that the word "both" in section 473(b) could have several possible interpretations affecting when a forgery conviction is excluded from resentencing as a misdemeanor: (1) whenever the defendant has also been convicted of identity theft; (2) whenever the defendant is convicted of identity theft at the same time he is convicted of forgery; or (3) whenever the defendant is convicted of identity theft for the same conduct as his forgery conviction. We may therefore consider Proposition 47's ballot summary and pamphlet to glean the voters' intended purpose and to ascertain the statute's overall purpose. (See *Pearson*, *supra*, 48 Cal.4th at p. 571.)

Although Proposition 47 does not specifically address whether forgery and identity theft convictions must arise in a single proceeding, the ballot summary does suggest the exclusionary provision in section 473(b) was meant to apply only

where check forgery bore some connection to identity theft. The Legislative Analyst writes: "Under current law, it is a wobbler crime to forge a check of any amount. Under this measure, forging a check worth $950 or less would always be a misdemeanor, except that it would remain a wobbler crime if the offender commits identity theft *in connection with* forging a check." (Voter Information Guide, Gen. Elec. (Nov. 4, 2014) analysis of Prop. 47 by Legis. Analyst, p. 35, italics added.) From this indicium, the Court of Appeal concluded that "the intent with which voters enacted the proposition, it is clear that 'convicted both of' (§ 473(b)) must apply only to identity theft that is committed in a transactionally related manner with the forgery of an instrument, and not where, as here, the identity theft occurred in an independent transaction that simply happened to be part of the same sentencing proceeding." (*Gonzales*, *supra*, 6 Cal.App.5th at p. 1073.) We agree that the two convictions must have been made "in connection with" each other, but we decline to adopt a "transactionally related" standard. Here, the analyst statement provides an example of how forgery and identity theft convictions must have been made "in connection with" each other to preclude relief under Proposition 47.**6**

---

**6**    We acknowledge the concurrence's reluctance to adopt the "in connection with" language as the standard. (Conc. opn. *post*, at pp. 1-4.) While this language does appear in the ballot pamphlet, we adopt this phrase because it is an apt description of the statutory requirement, bolstered by the pamphlet's contents — not merely because the language happens to appear in the pamphlet. Our interpretation of Proposition 47 is governed by the same principles that apply in construing a statute enacted by the Legislature. (*Pearson*, *supra*, 48 Cal.4th at p. 571.) When we interpret statutory language, whether from an initiative or a legislatively enacted bill, we must often explain what an ambiguous term actually means. Here, the term "both" establishes that some connection or relationship is necessary between a forgery and identity theft conviction to disqualify Gonzales from the benefit of having his sentence recalled. But because the word "both" may be somewhat ambiguous (see *ante* pp. 10-11), we consider the statute's text and remedial purpose as well as extrinsic sources. (See, e.g., *People v. Lopez*

11

The People contend that the analyst's statement referenced only forged checks. It also failed to mention the other instruments that Proposition 47 applies to, namely bonds, bank bills, notes, cashier's checks, traveler's checks, and money orders. And because of this omission, the People argue that the statement should not be read to narrow the identity theft exception in relation to all forgeries. But the People's reading of the analyst's statement would imply that only convictions involving forged checks and identity theft would be subject to the "in connection with" requirement. Nowhere in the statute's text or in the election materials is there an indication that such a limited exception was contemplated. A more sensible reading of the ballot materials, in context, suggests that the analyst's statement merely offered an example of how Proposition 47 would require a meaningful connection between forgery and identity theft to preclude an offender from being resentenced.

The statutory provisions at issue are phrased in the present tense: "This subdivision shall not be applicable to any person who *is convicted* both of forgery and of identity theft, as defined in Section 530.5." (§ 473(b), italics added.) Present tense language matters here because earlier sections of the same statute describe other disqualifying factors based on certain "prior convictions." (§ 473(b) [requiring a felony sentence for forgery "if that person has one or more *prior convictions* for an offense specified in clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667 or for an offense requiring registration pursuant to subdivision (c) of Section 290" (italics added)].) Other provisions added by Proposition 47 also describe the disqualifying effect of

(2005) 34 Cal.4th 1002, 1006.) The provision at issue stops well short of precluding relief for petitioners where the relationship between the two offenses is weak or nonexistent — and we find the "in connection with" language aptly describes the kind of relationship necessary to conclude that a forgery conviction may not be subject to resentencing.

previous convictions, including the statute punishing a person for writing an insufficient funds check with the intent to defraud. (§ 476a, subd. (b) ["This subdivision shall not be applicable if the defendant has previously been convicted of three or more violations of Section 470, 475, or 476, or of this section"].) These distinctions are most consistent with an understanding of Proposition 47 that does not elide the difference between disqualifying factors based on a person having separate previous convictions (i.e., past tense) and someone whose convictions arose from at least somewhat related conduct encompassing both forgery and identity theft (i.e., present tense).

The statutory provisions governing disqualifications based on a defendant's *past* convictions appear to create a different result. The provisions deny relief for certain categories of offenders who committed specific offenses earlier, irrespective of the relationship between these offenses. (See § 473(b); § 476a, subd. (b).) In contrast, use of the present tense in section 473(b) is more consistent with the idea that the conviction for the forgery offense must at least occur in a timeframe concurrent with the conviction for identity theft. And it would make little sense, under these circumstances, to suppose that disqualification from relief could occur merely because a person had allegedly related identity theft and forgery convictions, even if these occurred at entirely different times and were not included in the same judgment.

The relatively similar nature of the offenses mentioned in section 473(b) nonetheless suggests that the convictions in question must bear some meaningful relationship to each other — beyond the convictions' inclusion in the same judgment. Instead of including two entirely unrelated offenses — such as criminal violation of an environmental law and felony assault, for example — the provision at issue lists two offenses that tend to facilitate each other and, committed together, arguably trigger heightened law enforcement concerns. A person who

13

commits forgery by imitating the victim's signature on a check, for example, will often present identification to falsely represent his or her identity. The nature of these two offense categories helps explain why it makes sense for these to be included together in section 473(b), and for this provision to be read as relevant to situations where the offenses bear some relationship to each other. We can reasonably distinguish — and infer a distinction in a statute mentioning related offenses in present tense — between foreclosing relief to those convicted of felony forgery that was also facilitated by the felony offense of identity theft, and barring relief for anyone who happens to have been convicted, at some point in his or her life, of unrelated forgery and identity theft offenses.

Such a reading is consistent with the text and structure of this section of the statute, which separately precludes relief for certain categories of prior convictions and offenses. The first sentence in section 473(b) concerns the nature of the defendant and his past actions that would limit relief. This sentence prescribes misdemeanor treatment for a subset of forgeries "relating to" certain types of enumerated instruments valued at $950 or less, where the defendant has not suffered certain prior convictions. (§ 473(b).) While this "relating to" phrase may simply be modifying language in the first sentence, to the extent it can be read to apply more broadly, it supports our conclusion that there must be a connection between the two offenses because this sentence narrows the class of forgeries eligible for misdemeanor treatment to those "relating to" certain instruments. (*Ibid.*) And, as the concurrence acknowledges, the requirement that some connection or relationship exist between the offenses helps explain the Legislative Analyst's statement that check forgery would remain a misdemeanor except in cases where the offender commits identity theft in connection with forging a check. (Conc. opn. *post*, at pp. 2-4.)

14

The last sentence of section 473(b) evinces concern with the nature of the defendant's current offense: was it for just forgery, or forgery *and* identity theft? The Attorney General contends that the drafters could have used "in commission" to indicate a "transactionally related" requirement. But the statute reflects a somewhat broader concern — involving defendants "*convicted* of forgery and of identity theft" (§ 473(b), italics added), not just a forgery done while committing identity theft, or vice versa. Using language such as "in commission" would not have been sufficient to convey the same meaning as "any person who is convicted" of "both" crimes. This understanding is also consistent with the Legislative Analyst's interpretation of the disqualifying factor — "Under this measure, forging a check worth $950 or less would always be a misdemeanor, except that it would remain a wobbler crime if the offender commits identity theft *in connection with* forging a check." (Voter Information Guide, Gen. Elec. (Nov. 4, 2014) analysis of Prop. 47 by Legis. Analyst, p. 35, italics added.) So too is this reading consistent with statements concerning the statute's overarching purpose — which includes "ensur[ing] that prison spending is focused on violent and serious offenses" and "maximiz[ing] the alternatives for nonserious, nonviolent crime[s]." (*Id.*, text of Prop. 47, p. 70; accord *People v. Romanowski* (2017) 2 Cal.5th 903, 909.)

Because Gonzales's forgery and identity theft convictions did not occur "in connection with" each other, we conclude he is among the group of convicts eligible for resentencing relief under Proposition 47.

## III.

Section 473(b) is best read to require that the offenses resulting in defendant's forgery and identity theft convictions must have been undertaken "in connection with" each other to preclude him from resentencing eligibility. This understanding is consistent with the language and intended purpose of Proposition 47, and what insights we can glean from the ballot materials. Here, Gonzales's convictions were based on conduct committed years apart and bearing no relationship to each other. That defendant was convicted and sentenced in a single consolidated proceeding for his forgery and identity theft offenses does not automatically tether these sufficiently to leave Gonzales ineligible for resentencing under Proposition 47.

We affirm the Court of Appeal and remand the matter back to the trial court for further proceedings consistent with this opinion.

**CUÉLLAR, J.**

**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**CHIN, J.**
**LIU, J.**
**KRUGER, J.**
**MOORE, J. \***

_____
\*      Associate Justice of the Court of Appeal, Fourth Appellate District, Division Three, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

**CONCURRING OPINION BY CORRIGAN, J.**


I agree with the majority that there must be some relationship between a conviction for forgery and identity theft for the latter to preclude misdemeanor treatment of the former under Penal Code**[1]** section 473, subdivision (b). The majority concludes that "the conduct related to the forgery and identity theft convictions must have been made 'in connection with' each other . . . ." (Maj. opn. *ante*, at p. 2.) However, as the majority acknowledges, the "in connection with" phrasing appears nowhere in the statutory language but, instead, derives from the Legislative Analyst's suggested interpretation of the scheme appearing in the Voter Information Guide. (Maj. opn. *ante*, at p. 11.) If the drafters intended this language to be the relevant test, they could easily have included it in the statute presented for voter approval. This may seem like a minor point. Yet imprecise language in an initiative is often a source of difficulty. Initiative drafters should be mindful of the need for clarity and not assume that the courts will reach beyond what they present for voter approval by adopting clarifying language from another source.

The relationship required between forgery and identity theft appears in the statutory language of section 473, subdivision (b) itself: "Notwithstanding

---

**[1]**     Statutory references are to the Penal Code.

subdivision (a), any person who is guilty of forgery *relating to* a check, bond, bank bill, note, cashier's check, traveler's check, or money order, where the value of the check, bond, bank bill, note, cashier's check, traveler's check, or money order does not exceed nine hundred fifty dollars ($950), shall be punishable by imprisonment in a county jail for not more than one year, except that such person may instead be punished pursuant to subdivision (h) of Section 1170 if that person has one or more prior convictions for an offense specified in clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667 or for an offense requiring registration pursuant to subdivision (c) of Section 290.  This subdivision shall not be applicable to any person who is convicted both of forgery and of identity theft, as defined in Section 530.5."  (Italics added.)

The first sentence of section 473, subdivision (b) prescribes misdemeanor treatment for a subset of forgeries "relating to" seven types of enumerated instruments valued at $950 or less when the offender has not suffered certain prior convictions.  Because this sentence narrows the class of forgeries eligible for misdemeanor treatment to those "relating to" certain instruments, the most natural reading of the second sentence's exclusion of those "convicted both of forgery and of identity theft" suggests the exclusion applies only if one is also convicted of identity theft "relating to" the same instrument involved in the forgery conviction. (§ 473, subd. (b).)  This understanding explains the Legislative Analyst's statement that check forgery would be a misdemeanor " 'except that it would remain a wobbler crime if the offender commits identity theft in connection with forging a check.' "  (Voter Information Guide, Gen. Elec. (Nov. 4, 2014) analysis of Prop. 47 by Legis. Analyst, p. 35.)  In other words, if both convictions "relat[e] to" the same instrument, misdemeanor treatment for forgery is not allowed. (§ 473, subd. (b).)

2

This understanding is also consistent with the identity theft statute. As relevant here, section 530.5, subdivision(a) provides: "Every person who willfully obtains personal identifying information . . . and uses that information for any unlawful purpose, including to obtain, or attempt to obtain, credit, goods, services, real property, or medical information without the consent of that person, is guilty of a public offense . . . ." This offense may be committed in myriad ways. However, for this offense to have some nexus to a forgery conviction "relating to" a particular instrument under section 473, subdivision (b), the personal identifying information must be used with respect to the same instrument. As we observed in *People v. Romanowski* (2017) 2 Cal.5th 903, "a check can contain some of the same information that is found on an access card, along with the owner's address and other details that would facilitate identity theft." (*Id*. at p. 913.) The presence of such personal information on the types of instruments listed in section 473, subdivision (b) would seem to confirm that the drafters were concerned with the commission of identity theft related to those instruments and, thus, intended to exclude misdemeanor treatment for forgeries involving identity theft as they related to the those instruments.

Section 473, subdivision (b) reflects the electorate's intent to prescribe misdemeanor treatment for forgery not exceeding $950 "relating to" seven types of instruments. In light of the electorate's focus on these, and not other, instruments, the applicability of section 473, subdivision (b)'s exception for those "convicted both of forgery and of identity theft" should likewise be interpreted to focus on whether the identity theft conviction "relat[ed] to" the same instrument involved in the forgery conviction. Here, the record reflects defendant's identity theft conviction stemmed from his jailhouse efforts between 2005 and 2006 to open fraudulent phone accounts. This conviction did not "relat[e] to" the particular instruments at issue in the 2003 incident, which was the basis for his

3

forgery convictions.  (§ 473, subd. (b).)  Accordingly, the identity theft conviction did not preclude defendant from resentencing under section 1170.18, subdivision (a).

**CORRIGAN, J.**

**I CONCUR:**

**CHIN, J.**

4

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** People v. Gonzales
_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 6 Cal.App.5th 1067
**Rehearing Granted**

_____

**Opinion No.** S240044
**Date Filed:** August 27, 2018
_____

**Court:** Superior
**County:** Sacramento
**Judge:** Marjorie Koller

_____

**Counsel:**

Elizabeth M. Campbell, under appointment by the Supreme Court, for Defendant and Appellant.

Kamala D. Harris and Xavier Becerra, Attorneys General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine Chatman, Raymond L. Brosterhous II, Eric L. Christoffersen, Rachelle A. Newcomb and Ivan P. Marrs, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Elizabeth M. Campbell
PMB 334
3104 O Street
Sacramento, CA  95816
(530) 786-4108

Ivan P. Marrs
Deputy Attorney General
1300 I Street, Suite 125
Sacramento, CA  94244-2550
(916) 210-7734