Filed 10/4/21  P. v. Baker CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>RYNELL MARION BAKER,<br><br>    Defendant and Appellant. | D077943<br><br><br>(Super. Ct. No. CR143101) |

APPEAL from an order of the Superior Court of San Diego County, David M. Gill, Judge.  Affirmed.

Robert E. Boyce, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters and Julie L. Garland, Assistant Attorneys General, A. Natasha Cortina and Alan L. Amann, Deputy Attorneys General, for Plaintiff and Respondent.

In 1994, a jury convicted Rynell Marion Baker and codefendants Reginald Lewis and William Ortega of conspiracy to commit murder (Pen.

Code,[1] § 182, subd. (a)(1)) and first degree murder (§ 187, subd. (a)). It found true allegations that Ortega personally used a firearm (§ 12022.5) and that Lewis and Baker were armed with a firearm during the murder's commission. (§ 12022, subd. (a)(1).) The trial court sentenced Baker to 25 years to life for murder plus a consecutive one-year sentence for the firearm allegation. It stayed the sentence for the conspiracy count.

In January 2020, Baker petitioned for resentencing under section 1170.95, a resentencing statute enacted as part of Senate Bill No. 1437 (2017-2018 Reg. Sess.) and asked the court to assign him counsel. In part, Senate Bill No. 1437 amended the felony-murder rule and the natural and probable consequences doctrine as it relates to murder, limiting murder liability to defendants who (1) are the actual killer; (2) are not the actual killer but who share the killer's intent to kill and aid and abet the killing; or (3) are a major participant in an enumerated felony and who act with reckless indifference to human life, and eliminating natural and probable consequences liability for murder regardless of degree. (*People v. Gentile* (2020) 10 Cal.5th 830, 846-848.) The trial court denied the petition, finding Baker did not make a prima facie showing he was entitled to relief under the statute.

On appeal, Baker contends the court erred by denying his petition without issuing an order to show cause and holding a hearing; that the court's decision was based on improper "factfinding" and consideration of matters outside of his petition. He maintains the court should have viewed his petition's factual allegations as true, and issued an order to show cause because his petition complied with section 1170.95 and made out a prima facie claim for relief. Baker asks that we remand the matter with directions

---

[1] Undesignated statutory references are to the Penal Code.

that the court appoint counsel for him, issue an order to show cause, and conduct an evidentiary hearing.

While Baker's appeal was pending, the California Supreme Court decided *People v. Lewis* (2021) 11 Cal.5th 952 (*Lewis*), which resolves, among other things, whether a trial court presented with a section 1170.95 petition may consider the record of conviction to determine whether a petitioner such as Baker made out a prima facie showing he is entitled to section 1170.95 relief.[2] We invited the parties to file supplemental briefing on the decision, and have considered those briefs. Applying *Lewis*, we reject Baker's contentions and affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

We summarize the underlying facts of Baker and his codefendants' crimes, which are set forth in more detail in this court's prior opinion denying Baker's petition for a writ of habeas corpus and affirming the convictions. (*People v. Baker, et al.* (Jun. 21, 1996, D021705) [nonpub. opn.] (*Baker*).) A copy of this court's opinion is in the record of this appeal.

In January 1993, Baker, Lewis and Ortega, all members of the West Coast Crips criminal street gang, were at a nightclub where they " 'mad-

---

[2]    *Lewis* additionally held a defendant is statutorily entitled to counsel, if requested, upon filing a facially sufficient petition under section 1170.95. This followed from the *Lewis* court's interpretation of subdivision (c) of section 1170.95, which it held described only a single prima facie showing, not a two-step process with distinct sequential inquiries: " 'If the petitioner has requested counsel, the court *shall* appoint counsel to represent the petitioner.' [Citation.] The combined meaning is clear: petitioners who file a complying petition requesting counsel are to receive counsel upon the filing of a compliant petition." (*Lewis*, *supra*, 11 Cal.5th at p. 963.) Baker was represented by the Office of the Alternate Public Defender when he filed his reply to the People's opposition to his petition; thus, this part of *Lewis*'s holding is not pertinent here.

dogg[ed]' " some rival Piru gang members, L.M. and R.I. A verbal altercation ensued between the rival gang members, and club bouncers separated them. Baker, Lewis and Ortega left about 10 to 15 minutes before the club closed at 3:45 a.m. L.M. and his group left the club when it closed. As the club was closing, several Crips gang members, including Baker and Ortega, were waiting outside standing shoulder to shoulder on a median island facing the club. Baker and Ortega stood beside each other. When L.M. and R.I. walked out, Baker, Ortega and the group moved forward and formed a semicircle around them. Baker shouted, " 'What's up now, motherfuckers? You guys don't have the bouncers here to keep us off your ass right now. Let's take [care] of now what we should have took care of inside.' " Seeing Baker reach to the back of his trench coat, R.I. ran, shouting to L.M. that the men had guns. Ortega raised his arm and shot L.M., killing him.

After a jury convicted Baker and Ortega as stated above, this court in June 1996 affirmed the judgment in an unpublished opinion. (*Baker I*, *supra*, D021705.) In part, we concluded: "[T]he evidence . . . is sufficient to permit the jury to infer Baker knew Ortega, at least, was armed and the group intended to kill [L.M.], the principal antagonist in the Crip/Blood confrontation inside the club. Baker's actions at the shooting scene show he helped prevent [L.M.] from escaping. The evidence is sufficient to find he aided and abetted." We likewise concluded there was substantial evidence Baker conspired to commit murder.

In January 2020, Baker petitioned for resentencing under section 1170.95 using a check-box form. He asserted he was convicted of first or second degree murder pursuant to the felony-murder rule or natural and probable consequences doctrine. He also asserted he was convicted of first degree felony murder but because of changes to sections 188 and 189, he

4

could not now be convicted because he was not the actual killer, nor was he a major participant in the felony who acted with reckless indifference to human life during the course of the crime. Pointing out Baker was convicted of first degree murder and conspiracy to commit murder, the People responded in part that Baker had not made out a prima facie showing he was entitled to relief; that is, he had not established he could not be convicted of first or second degree murder because of the statutory changes to those offenses set out in section 1170.95. They argued Baker's conviction for conspiracy to commit murder required the specific intent to kill, and was necessarily conspiracy to commit premeditated and deliberated first degree murder. Thus, the People asserted that notwithstanding his declaration to the contrary, Baker had failed to make the showing that he came within the provisions of section 1170.95, as he had not pleaded any facts from his record of conviction or new facts demonstrating he could not be convicted under the amended law. They argued the court was permitted to consider Baker's record of conviction and the content of its own files and if it determined he had not made the necessary showing, deny the petition.

Now represented by the Office of the Alternate Public Defender, Baker replied that his charging documents and verdict forms did not specify a theory of liability, and that under *People v. Drayton* (2020) 47 Cal.App.5th 965[3] the court should accept the facts asserted in a petition for resentencing unless they were untrue as a matter of law. He asserted the court was required to issue an order to show cause if, taking the petition's facts as true, the petitioner would be entitled to relief because he met section 1170.95's

---

[3]    *Lewis* abrogated *Drayton* as to the two-step analysis, but relied on that case in ruling on the prima facie-showing issue. (*Lewis, supra*, 11 Cal.5th at p. 963.)

requirements. Baker argued his petition alleged each of the three facts required by the law, and the charging documents confirmed Baker was charged and convicted of first degree murder, but did not provide sufficient information about the theory of liability used by the People. He asked the court to issue an order to show cause and set a hearing to decide the merits of his petition.

The court denied Baker's petition on grounds Baker did not make a prima facie showing he warranted the requested relief. It ruled his petition and response were "boilerplate" and conclusory; they did not provide facts or explanation "as to why or how the charging document 'allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine' nor how [Baker] 'could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019.' " The court continued that the conclusory allegations were "blatantly contradicted by the record of conviction" as the jury was not instructed on either felony murder or the natural and probable consequences doctrine, and thus the record contradicted the assertion that the charging document allowed the prosecution to proceed on either theory of murder. The court pointed out that the jury in Baker's case unanimously found he conspired to commit first degree murder and was instructed that to convict him of that offense, it had to find he acted with the specific intent to agree to commit the public offense of murder. Thus, it found the jury "also made an explicit finding that [Baker] acted with intent to kill when he planned and participated in the murder." The trial court finally observed that this court had rejected Baker's arguments challenging the evidence of his specific intent to agree to murder and to kill, and section 1170.95 was not a vehicle to relitigate those claims.

6

Baker filed this appeal.

## DISCUSSION

### I. *Senate Bill No. 1437 and Standard of Review*

The court in *Lewis* summarized the background and operation of section 1170.95: "Effective January 1, 2019, the Legislature passed Senate Bill 1437 'to amend the felony-murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' (Stats. 2018, ch. 1015, § 1, subd. (f).) In addition to substantively amending sections 188 and 189 of the Penal Code, Senate Bill 1437 added section 1170.95, which provides a procedure for convicted murderers who could not be convicted under the law as amended to retroactively seek relief. [Citation.]

"Pursuant to section 1170.95, [subdivision (a),] an offender must file a petition in the sentencing court averring that: '(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine[;] [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted [of] first degree or second degree murder[;] [¶] [and] (3) The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019.' [Citations.] Additionally, the petition shall state "[w]hether the petitioner requests the appointment of counsel." [Citation.] If a petition fails to [include the contents required by section 1170.95,] subdivision (b)(1) [i.e., petitioner's declaration under subdivision (a), case

number and year of conviction, and a statement whether petitioner requests appointment of counsel] 'the court may deny the petition without prejudice to the filing of another petition . . . .' [Citation.] [¶] Where the petition complies with [section 1170.95,] subdivision (b)'s three requirements, then the court proceeds to [section 1170.95,] subdivision (c) to assess whether the petitioner has made 'a prima facie showing' for relief." (*Lewis*, *supra*, 11 Cal.5th at pp. 959-960.)

Section 1170.95, subdivision (c) provides: "The court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section. If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner. The prosecutor shall file and serve a response within 60 days of service of the petition and the petitioner may file and serve a reply within 30 days after the prosecutor response is served. These deadlines shall be extended for good cause. If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause." This provision "describe[s] only a single prima facie showing"; " ' "[t]he first sentence [of subdivision (c)] states the rule" ' and ' "[t]he rest of the subdivision establishes the process for complying with that rule." ' " (*Lewis*, *supra*, 11 Cal.5th at p. 962.) Applying this meaning, petitioners who file a complying petition requesting counsel are to receive counsel upon the filing of a facially sufficient petition. (*Id*. at pp. 957, 967, 970.) "[O]nly *after* the appointment of counsel and the opportunity for briefing may the superior court consider the record of conviction to determine whether 'the petitioner makes a prima facie showing that he or she is entitled to relief.' " (*Id*. at p. 957.)

"If the trial court determines that a prima facie showing for relief has been made, the trial court issues an order to show cause, and then must hold

a hearing 'to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not . . . previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence.' [Citation.] 'The prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens.' [Citation.] At the hearing stage, 'the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing.' " (*Lewis, supra*, 11 Cal.5th at p. 960; see also *People v. Gentile, supra*, 10 Cal.5th at pp. 842-843; *People v. Turner* (2020) 45 Cal.App.5th 428, 433-434.)

## II. *Equal Protection Argument*

We begin with Baker's argument that he may challenge his conviction for conspiracy to commit murder under section 1170.95, and that any conclusion otherwise violates his right to equal protection under the state and federal Constitutions.[4]

The starting point for statutory interpretation is the statute's language. (*People v. Gonzales* (2018) 6 Cal.5th 44, 50.) Section 1170.95 provides a remedy only for "[a] person convicted of felony murder or murder." (§ 1170.95, subd. (a); accord, *People v. Paige* (2020) 51 Cal.App.5th 194, 202 [statute does not provide relief to persons convicted of manslaughter]; *People v. Sanchez* (2020) 48 Cal.App.5th 914, 918 ["By its plain language, section

---

4    The People do not respond to Baker's equal protection contention, presumably because the trial court in this case entertained Baker's petition, accepted and considered briefing on the issue, and decided whether he made out a prima facie case under section 1170.95 with respect to both his convictions for murder and conspiracy to commit murder.

1170.95 . . . makes sentencing relief available only to qualifying persons convicted of murder"]; *People v. Larios* (2019) 42 Cal.App.5th 956, 970, review granted Feb. 26, 2020, S259983 ["the relief provided in section 1170.95 is limited to certain murder convictions and excludes all other convictions . . . ."].)[5] On that ground, Baker is not eligible for relief under section 1170.95 with respect to his conspiracy conviction.

Baker, however, maintains such an interpretation violates equal protection under the state and federal Constitutions as "irrationally under-inclusive, permitting imposition of a more severe penalty on an accomplice under the natural and probable consequences doctrine when the victim is killed or that a murder was in furtherance of a conspiracy." He argues he has shown a state-adopted classification affects two or more similarly situated groups in an unequal manner, because murder and conspiracy to commit murder are "similarly situated" for purposes of section 1170.95 as both require malice by definition.

We cannot agree. " '[O]ffenders who commit different crimes are not similarly situated for equal protection purposes.' " (*People v. Cervantes* (2020) 44 Cal.App.5th 884, 888; accord, *People v. Paige*, *supra*, 51 Cal.App.5th at p. 206; *People v. Sanchez*, *supra*, 48 Cal.App.5th at p. 920.) Baker was convicted of conspiracy, a different crime from murder. (*United States v. Rabinowich* (1915) 238 U.S. 78, 86 ["It . . . has been repeatedly declared in decisions of this court, that a conspiracy to commit a crime is a different offense from the crime that is the object of the conspiracy"].) "Conspiracy is an inchoate crime. [Citation.] It does not require the commission of the substantive offense that is the object of the conspiracy." (*People v. Swain*

---

[5] We may rely on appellate cases as persuasive authority while pending review. (Cal. Rules of Court, rule 8.1115(e)(1).)

(1996) 12 Cal.4th 593, 599-600.) Thus, Baker " 'has failed to establish the threshold requirement of an equal protection claim: disparate treatment of similarly situated persons.' " (*Sanchez*, at p. 920; accord, *Paige*, at p. 205; *Cervantes*, at p. 888.)

Even if we accepted Baker's argument that persons convicted of murder and conspiracy to commit murder are similarly situated for purposes of section 1170.95, we would still reject his equal protection challenge. "[I]f the classification does not involve a suspect class, legislation is presumed to be valid under the equal protection clause if the statutory classification is rationally related to a legitimate state interest." (*People v. Mora* (2013) 214 Cal.App.4th 1477, 1483; see *People v. Paige*, *supra*, 51 Cal.App.5th at p. 205 [applying rational basis review in deciding equal protection challenge]; *Sanchez*, at p. 921 [same]; *Cervantes*, at p. 888 [same]; *People v. Lopez* (2019) 38 Cal.App.5th 1087, 1111, review granted November 13, 2019, S258175 ["We . . . apply rational basis review to determine whether the Legislature's limitation of the ameliorative provisions of Senate Bill 1437 was justified"].)

We conclude there is a rational basis to exclude conspiracy from section 1170.95 when multiple defendants act in concert. The mere fact of cooperation by multiple persons creates a higher degree of culpability: "For two or more to confederate and combine together to commit or cause to be committed a breach of the criminal laws is an offense of the gravest character, sometimes quite outweighing, in injury to the public, the mere commission of the contemplated crime." (*United States v. Rabinowich*, *supra*, 238 U.S. at p. 88.) As long as the Legislature acts rationally, its determination to exclude crimes from the ambit of section 1170.95 should not be disturbed. (See *People v. Sanchez, supra*, 48 Cal.App.5th at p. 921.)

11

III. *Consideration of Matters Outside Baker's Petition*

Baker contends the trial court erred by denying his request for an order to show cause and summarily denying his petition based on matters outside his petition. He maintains section 1170.95 requires that the court conduct a purely facial review of the factual assertions in a defendant's petition and accept those assertions as true. According to Baker, the court erred in his case by looking behind his petition's allegations to the jury instructions, and engaged in prohibited factfinding to determine he was ineligible.

In *Lewis*, the California Supreme Court decided against Baker's interpretation of the statute. A trial court can consult and rely on documents within the record of conviction in determining whether a prima facie showing is made, if the documents are relevant to the underlying substantive question. (*Lewis, supra*, 11 Cal.5th at p. 972, fn. 6.) "[T]here is no categorical bar to consulting the record of conviction at the prima facie stage." (*Ibid.*) The court reasoned: "The record of conviction will necessarily inform the trial court's prima facie inquiry under section 1170.95, allowing the court to distinguish petitions with potential merit from those that are clearly meritless. This is consistent with the statute's overall purpose: to ensure that murder culpability is commensurate with a person's actions, while also ensuring that clearly meritless petitions can be efficiently addressed as part of a single-step prima facie review process." (*Lewis, supra*, 11 Cal.5th at p. 971.)

However, that prima facie inquiry is "limited." (*Lewis, supra*, 11 Cal.5th at p. 971.) "Like the analogous prima facie inquiry in habeas corpus proceedings, ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court

12

must issue an order to show cause." ' [Citation.] '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' [Citations.] 'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*Ibid.*) *Lewis* explained that appellate opinions "are generally considered to be part of the record of conviction. [Citation.] However . . . the probative value of an appellate opinion is case-specific, and 'it is certainly correct that an appellate opinion might not supply all answers.' [Citation.] In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' [Citation.] . . . [T]he 'prima facie bar was intentionally and correctly set very low.' " (*Lewis*, at p. 972.) *Lewis* concluded that "the parties can, and should, use the record of conviction to aid the trial court in reliably assessing whether a petitioner has made a prima facie case for relief under [section 1170.95,] subdivision (c)." (*Ibid.*)[6]

Under *Lewis*, the trial court here properly considered documents in Baker's record of conviction, including this court's prior appellate opinion, in deciding whether he established a prima facie case of eligibility for resentencing under section 1170.95.

Baker does not squarely argue in his opening brief (with a required corresponding heading, Cal. Rules of Court, rule 8.204(a)(1)(B)) that his record of conviction as a factual matter fails to support the trial court's

---

6    *Lewis* did not resolve what substantively is required for a petitioner to prove he or she " 'could not be convicted of first or second degree murder because of changes to section 188 or 189 made effective January 1, 2019.' " (*Lewis*, *supra*, 11 Cal.5th at p. 972, fn. 6.)

conclusion that he is not entitled to section 1170.95 relief. He maintains the court engaged in inappropriate factfinding in connection with its consideration of the jury instructions. He repeats the contentions in his supplemental brief, arguing that because the conspiracy instructions did not identify a victim, the jury could have found him guilty of conspiracy not because he held the intent to kill, but because it found the murder by one conspirator was the act of all conspirators.[7]

We disagree that the court in reaching its ruling engaged in improper " 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Lewis, supra*, 11 Cal.5th at p. 972, quoting *People v Drayton, supra*, 47 Cal.App.5th at p. 979.) Rather, we hold the record of Baker's conviction refutes the allegations in his petition, thus the superior court did not err in determining Baker was ineligible for relief under section 1170.95 as a matter of law.

Though *Lewis* did not address the relevant standard of review for the lower court's determination of whether a petitioner has made a prima facie showing,[8] we agree it is predominately a legal question, and thus our review is de novo. (Accord, *People v. Arias* (2021) 66 Cal.App.5th 987, 999; *People v. Cunningham* (2015) 61 Cal.4th 609, 664 [independently reviewing the record

---

[7]    Baker further argues the court erred by considering the absence of a natural and probable consequences jury instruction, stating only that the court's "conclusion that the absence of an instruction precluded the jury's reliance on the natural and probable consequences doctrine necessarily involved 'factfinding' beyond the assertions in the petition and the charging document." Baker does not further explain the assertion.

[8]    *Lewis* did, however, address the standard of review for the prejudice determination stemming from the petitioner's deprivation of counsel. (*Lewis, supra*, 11 Cal.5th at pp. 972-973.)

to resolve the legal question of whether it supported a prima facie case of racial discrimination in juror excusal].)

Here, the jury was presented only with instructions on murder with malice aforethought; it was not presented with theories of felony murder or natural-and-probable-consequences murder. Further, as *Lewis* made clear, the appellate opinion is generally part of the record of conviction. More specifically, "an appellate court decision . . . can be relied upon to determine the nature of a prior conviction because it may disclose the facts upon which the conviction was based." (*People v. Trujillo* (2006) 40 Cal.4th 165, 180.) In the opinion in Baker's case, this court affirmed the jury's findings that Baker aided and abetted L.M.'s murder and committed conspiracy to commit murder, which "is necessarily conspiracy to commit premeditated and deliberated first degree murder." (*People v. Beck and Cruz* (2019) 8 Cal.5th 548, 641.) Senate Bill No. 1437 "did not . . . alter the law regarding the criminal liability of direct aiders and abettors of murder because such persons necessarily 'know and share the murderous intent of the actual perpetrator.' [Citations.] One who directly aids and abets another who commits murder is thus liable for murder under the new law just as he or she was liable under the old law." (*People v. Offley* (2020) 48 Cal.App.5th 588, 595-596; see also *People v. McCoy* (2001) 25 Cal.4th 1111, 1118.) Further, a conviction for conspiracy to commit murder cannot be vacated under section 1170.95. Such a conviction requires proof that the defendant had the intent to kill and cannot be based on a theory of implied malice. (*People v. Swain*, *supra*, 12 Cal.4th at p. 607.) In Baker's case, the jury in convicting him found true overt acts alleging that Ortega, Lewis, Baker and other unknown persons "waited on the center divide of . . . El Cajon Boulevard and watched the . . . nightclub until the victim, [L.M.], exited the nightclub" and further

15

that Ortega "shot [L.M.] in the head, killing him." Taken as a whole, the record refutes any possible inference or conclusion that Baker did not hold the intent to kill L.M., as Baker maintains.

## DISPOSITION

The order denying Baker's petition to vacate his convictions and for resentencing is affirmed.


O'ROURKE, J.

WE CONCUR:


HUFFMAN, Acting P. J.


AARON, J.


16