# IN THE SUPREME COURT OF CALIFORNIA

THE PEOPLE,
Plaintiff and Respondent,

v.

RAUL OSUNA GUERRERO,
Defendant and Appellant.

S253405

Sixth Appellate District
H041900

Santa Clara County Superior Court
C1476320

April 30, 2020

Justice Liu authored the opinion of the Court, in which Chief Justice Cantil-Sakauye and Justices Chin, Corrigan, Cuéllar, Kruger, and Groban concurred.

PEOPLE v. GUERRERO

S253405


Opinion of the Court by Liu, J.


Proposition 47 reduced the punishment for certain nonserious, nonviolent crimes previously classified as "wobblers," which were punishable either as a felony or as a misdemeanor. Among the offenses it amended was forgery not exceeding $950 dollars. (Pen. Code, § 473, subd. (b) (section 473(b)); all undesignated statutory references are to this code.) But Proposition 47 also included an exception to that amendment. The exception provides that the sentencing reduction for forgery is not "applicable to any person who is convicted both of forgery and of identity theft, as defined in Section 530.5." (§ 473(b).)

In *People v. Gonzales* (2018) 6 Cal.5th 44 (*Gonzales*), we held that this exception applies only when there is a "meaningful connection" between a defendant's forgery conviction and his conviction for misuse of personal identifying information (§ 530.5), commonly referred to as identity theft. (*Gonzales*, at p. 53.) We concluded that the mere fact that those convictions were secured in the same proceeding does not demonstrate such a connection. (*Id.* at p. 54.)

In this case, we are asked to further clarify the meaningful connection standard by answering a related question: Does the fact that a defendant possessed separate stolen identification and forged instruments together at the same time provide a sufficient connection between the two offenses to bar him from

a sentence reduction pursuant to section 473(b)? We hold that it does not. A meaningful connection between forgery and identity theft for purposes of the identity theft exception requires a facilitative relationship between the two offenses. The mere fact that a defendant possessed two separate items of contraband at the same time does not demonstrate such a relationship.

## I.

Defendant Raul Osuna Guerrero was arrested in 2014 for violating a no-contact protective order after he refused to leave his daughter's apartment. When one of the arresting officers searched Guerrero, he found a wallet in Guerrero's jacket and placed it in a plastic bag along with Guerrero's other personal belongings. Guerrero was booked into Santa Clara County jail that same day, where a corrections officer inventoried his possessions. Inside Guerrero's wallet, the officer found a driver's license belonging to another person, a benefits card belonging to another person, a counterfeit $50 bill, a check from the St. Thomas More Society of Santa Clara County, and four personal checks neither owned by Guerrero nor made out to him.

Based on Guerrero's conduct and the items found in his wallet, he was charged with one misdemeanor count of possessing the personal identifying information of another person (§ 530.5, subd. (c)(1)), one felony count of concealing or withholding stolen property (§ 496, subd. (a)), one misdemeanor count of contempt of court (§ 166, subd. (a)(4)), and one felony count of forgery by possession of fictitious bill (§ 476). The prosecution also alleged that Guerrero had a prior robbery conviction that counted as a strike within the meaning of the "Three Strikes" law. (§§ 667, subds. (b)–(i), 1170.12.) A jury

found Guerrero guilty of all charges, and the trial court found the strike allegation true.

After Guerrero was convicted but before he was sentenced, the electorate approved Proposition 47 in November 2014, the Safe Neighborhoods and Schools Act, which reduced the punishment for certain crimes previously punishable as felonies. At sentencing, the trial court found that Proposition 47 reduced Guerrero's felony stolen property conviction (§ 496, subd. (a)) to a misdemeanor. But the court did not make the same finding with respect to his felony forgery conviction (§ 476). The court sentenced Guerrero to a four-year term for forgery and to two-month terms for each remaining count, all running concurrently.

On appeal, Guerrero argued, among other things, that section 473(b) reduced his forgery conviction to a misdemeanor because the counterfeit bill on which his conviction was based was less than $950. The Court of Appeal rejected this argument and affirmed Guerrero's sentence in an unpublished opinion, reasoning that the sentence reduction for forgery in section 473(b) does not apply "where a defendant is concurrently convicted of both forgery and identity theft [which] is what occurred in this case."

After the Court of Appeal affirmed Guerrero's sentence, we held in *Gonzales* that a forgery conviction under section 473 not exceeding $950 must be punished as a misdemeanor unless the underlying conduct was committed " 'in connection with' " conduct underlying an identity theft conviction. (*Gonzales*, *supra*, 6 Cal.5th at p. 53.) We then granted Guerrero's petition for review and transferred his case to the Court of Appeal with

directions to vacate its decision and to reconsider Guerrero's appeal in light of *Gonzales*.

On reconsideration, the Court of Appeal again affirmed Guerrero's forgery sentence, concluding that *Gonzales* did not change the outcome. The court held that there was a meaningful connection between Guerrero's forgery and identity theft convictions because he "contemporaneously possessed another person's personal identifying information and a fictitious $50 bill." We granted review.

## II.

Forgery is a wobbler crime punishable either as a felony or as a misdemeanor. (§ 473, subd. (a).) Proposition 47 reduced forgery offenses to a misdemeanor when the amount in question does not exceed $950. It added section 473(b), which provides that "forgery relating to a check, bond, bank bill, note, cashier's check, traveler's check, or money order, where the value of the [instrument] does not exceed nine hundred fifty dollars ($950), shall be punishable by imprisonment in a county jail for not more than one year . . . ." Section 473(b) goes on to provide two exceptions: First, regardless of the value of the offense, forgery may be punished as a felony "if that person has one or more prior convictions for an offense specified in clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667 or for an offense requiring registration pursuant to subdivision (c) of Section 290." Second, section 473(b) does not apply "to any person who is convicted both of forgery and of identity theft, as defined in Section 530.5." The second exception — the identity theft exception — is at issue in this case.

We recently interpreted section 473(b)'s identity theft exception in *Gonzales*. The defendant in that case was charged with felony forgery and identity theft in the same information but the conduct underlying those two charges occurred years apart and had no relationship to each other. (*Gonzales*, *supra*, 6 Cal.5th at p. 47.) The defendant pleaded guilty to those charges and, after passage of Proposition 47, sought reduction of his forgery conviction to a misdemeanor. We held that section 473(b) did not preclude his resentencing. (*Gonzales*, at p. 56.)

We began by noting that section 473(b)'s language is ambiguous as to what relationship between forgery and identity theft is required to trigger the exception. (*Gonzales*, *supra*, 6 Cal.5th at p. 52.) The word "both" can be reasonably construed to mean that a defendant's forgery conviction is punishable as a felony "(1) whenever the defendant has also been convicted of identity theft; (2) whenever the defendant is convicted of identity theft at the same time he is convicted of forgery; or (3) whenever the defendant is convicted of identity theft for the same conduct as his forgery conviction." (*Ibid*.)

We rejected the first construction as contrary to the text and structure of the statute. (*Gonzales*, *supra*, 6 Cal.5th at p. 54.) The identity theft exception, we explained, is phrased in the present tense: Protection from felony punishment is unavailable "to any person who *is* convicted both of forgery and of identity theft." (§ 473(b), italics added.) This is in contrast with other language in section 473(b) disqualifying a forgery conviction for reduction to a misdemeanor if the defendant has "prior convictions" for specified violent felonies and sex offenses. If Proposition 47 had intended to preclude a forgery defendant from relief whenever the defendant also had an identity theft conviction regardless of when it was received, Proposition 47

5

would have included identity theft among those previous disqualifying convictions. Instead, the drafters added a separate exception using the present tense, indicating that "conviction for the forgery offense must at least occur in a timeframe concurrent with the conviction for identity theft." (*Gonzales*, at p. 54.)

We also rejected the second possible construction, i.e., that a forgery conviction is punishable as a felony "whenever the defendant is convicted of identity theft at the same time he is convicted of forgery." (*Gonzales*, *supra*, 6 Cal.5th at p. 52.) We indicated that such a construction would be arbitrary. It would mean that a defendant convicted of forgery and identity theft in the same proceeding could have his forgery conviction punished as a felony "simply because he was convicted and sentenced in a consolidated proceeding, whereas another defendant in a comparable situation [could not] if he were convicted in separate proceedings." (*Id.* at p. 51.) Nothing in the statute suggests that eligibility for felony punishment should turn on the procedural sequence of a defendant's forgery and identity theft convictions.

Instead, *Gonzales* held that the identity theft exception makes forgery not exceeding $950 punishable as a felony only if the defendant is also convicted of identity theft in the same proceeding and the "conduct related to the forgery and identity theft convictions were made 'in connection with' each other." (*Gonzales*, *supra*, 6 Cal.5th at p. 50.) The two convictions "must bear some meaningful relationship to each other — beyond the convictions' inclusion in the same judgment." (*Id.* at p. 54.) We reached this conclusion based on the legislative history and purpose of Proposition 47. The Legislative Analyst's interpretation of section 473(b) explained that "[u]nder this measure, forging a check worth $950 or less would always be a

misdemeanor, except that it would remain a wobbler crime if the offender commits identity theft *in connection with* forging a check." (Voter Information Guide, Gen. Elec. (Nov. 4, 2014) analysis of Prop. 47 by Legis. Analyst, p. 35, italics added.) Moreover, we found that the electorate had a purpose in combining the two offenses: Forgery and identity theft "tend to facilitate each other and, committed together, arguably trigger heightened law enforcement concerns. A person who commits forgery by imitating the victim's signature on a check, for example, will often present identification to falsely represent his or her identity." (*Gonzales*, at p. 54.) At the same time, we declined to adopt a requirement that the forgery and identity theft offenses must be "committed in a transactionally related manner" (*id.* at p. 53) or that they must relate to the "same instrument" (*id.* at p. 57; see also *id.* at p. 53, fn. 6). Because the conduct underlying Gonzales's forgery and identity theft convictions occurred years apart and was unrelated, we held that section 473(b) did not preclude reduction of his forgery conviction to a misdemeanor. (*Gonzales*, at p. 56.)

Our reasoning and holding in *Gonzales* are instructive on the question now before us: whether forgery and identity theft are undertaken in connection with each other for purposes of the identity theft exception in section 473(b) simply because a defendant possessed separate stolen identification and forged instruments together at the same time. Guerrero contends that concurrent possession, without more, is not enough to establish a meaningful connection between his forgery and identity theft convictions. The Attorney General argues that the answer depends on the "totality of the circumstances," including whether the convictions "are linked in time or place, whether the crimes required an identical or similar intent, whether the

same course of conduct played a significant part in both convictions, and whether the crimes facilitated one another or shared some other transactional relationship." According to the Attorney General, because Guerrero possessed the counterfeit bill and the stolen identification in the same place, with the intent to defraud in both cases, and because proof of each crime relied on largely the same evidence, there was a sufficient relationship between his identity theft and forgery convictions to disqualify him from a sentence reduction.

We agree with Guerrero that concurrent possession, without more, does not establish a meaningful connection between the two offenses for purposes of the identity theft exception. As we said in *Gonzales*, the identity theft exception does not arbitrarily combine two unrelated crimes; it "lists two offenses that tend to *facilitate* each other and, committed together, arguably trigger heightened law enforcement concerns." (*Gonzales*, *supra*, 6 Cal.5th at p. 54, italics added.) Although our reference to facilitation in *Gonzales* was illustrative, we now conclude that it provides the clearest standard rooted in the purpose of Proposition 47 to evaluate whether a meaningful connection between forgery and identity theft exists. To disqualify a defendant for relief under section 473(b), the prosecution must show that the forgery offense facilitated the identity theft offense, or vice versa. The fact that both offenses were committed at the same time and place, or the fact that evidence of both offenses was found at the same time and place, does not by itself mean that one offense facilitated the other.

As we have explained, section 473(b) does not disqualify a defendant from relief whenever there is any superficial connection between his forgery and identify theft convictions;

8

the connection must be a "meaningful" one. (*Gonzales*, *supra*, 6 Cal.5th at p. 53.) Here, as in *Gonzales*, Proposition 47's remedial objectives as well as the limits of those objectives inform our interpretation of the identity theft exception. (*Gonzales*, at p. 52, citing *People v. Dehoyos* (2018) 4 Cal.5th 594, 597–599.) Proposition 47 intended "to ensure that prison spending is focused on violent and serious offenses, [and] to maximize alternatives for nonserious, nonviolent crime." (Voter Information Guide, Gen. Elec., *supra*, text of Prop. 47, § 2, p. 70.) To this end, Proposition 47 redefined several theft-related offenses as misdemeanors instead of wobblers, including forgery of instruments worth $950 or less. At the same time, Proposition 47 limited its ameliorative reach by excluding more serious offenses from relief. We infer that the voters disqualified defendants convicted of both forgery and identity theft from sentence reduction because they believed that the commission of one of those crimes to facilitate the other "arguably trigger[s] heightened law enforcement concerns." (*Gonzales*, *supra*, 6 Cal.5th at p. 54; see also Voter Information Guide, Gen. Elec., *supra*, analysis of Prop. 47 by Legis. Analyst, p. 35 [forgery "would remain a wobbler crime if the offender commits identity theft in connection with forging a check"].) Forgery offenses that either facilitate or are facilitated by identity theft may result in greater economic and personal harms. Other Penal Code provisions recognize these heightened concerns by specifically punishing the falsification or possession of false driver's licenses and identification cards "with the intent that [they] be used to facilitate the commission of any forgery." (§§ 470a, 470b.)

Requiring a showing of facilitation provides a familiar and workable standard for determining whether a meaningful connection exists. Courts and juries are frequently asked to

determine whether conduct aids or facilitates the commission of an offense (e.g., § 31 [aiding and abetting]) or whether a defendant harbored the intent to facilitate (§§ 470a [falsifying identification to facilitate forgery], 470b [possessing false identification to facilitate forgery]). We said in *Gonzales* that "[w]e can reasonably distinguish . . . between foreclosing relief to those convicted of felony forgery that was also *facilitated* by the felony offense of identity theft, and barring relief for anyone who happens to have been convicted, at some point in his or her life, of unrelated forgery and identity theft offenses." (*Gonzales*, *supra*, 6 Cal.5th at p. 55, italics added.) And we provided a typical example: "A person who commits forgery by imitating the victim's signature on a check, for example, will often present identification to falsely represent his or her identity." (*Id.* at p. 54.) Identity theft may also facilitate forgery in relation to the same instrument. For example, a person may obtain a victim's home address or checking account number to create a forged check. This standard is preferable to the totality of the circumstances approach proposed by the Attorney General, which may create further uncertainty and result in inconsistent application.

An individual can commit forgery by possessing a forged instrument (§ 476), and an individual can commit identity theft by possessing stolen identification (§ 530.5, subd. (c)(1)). But simultaneous possession of separate stolen identification and forged instruments, without more, does not raise the same heightened law enforcement concerns that the identity theft exception in section 473(b) intended to address and is not sufficient to show a facilitative relationship. Of course, when a defendant possesses two items of contraband at the same time, those items are connected in a superficial sense — the same

person possesses them. But without additional evidence of a connection, that is all that can be said. Possession of one instrument need not have facilitated possession of the other. (Cf. *Ondarza v. Superior Court* (1980) 106 Cal.App.3d 195, 203 ["commission of two separate crimes on the same day does not justify an inference that they were necessarily connected"]; *People v. Saldana* (1965) 233 Cal.App.2d 24, 30 ["logic supports the inference that the Legislature did not intend the phrase 'two or more different offenses connected together in their commission' to apply to two wholly unrelated crimes merely because they were committed on the same day or . . . at the same time" (quoting § 954)].)

The Attorney General contends that a defendant "found in possession of the personal identifying information of one person and an altered check of another person" raises heightened law enforcement concerns because concurrent possession demonstrates that the defendant is "engaged in broad and wide-ranging efforts to defraud multiple victims." First, we doubt that voters intended to preclude a forgery defendant from relief simply because he engaged in a scheme to defraud multiple victims. If they did, section 473(b) would have also precluded relief for defendants convicted of two forgery offenses, two identity theft offenses, or more than one of any number of other fraud offenses (see, e.g., §§ 477 [counterfeiting coin], 532a [making false representations]) so long as those offenses had different victims. The electorate instead chose to exclude defendants who committed two and only two distinct fraud offenses together. Moreover, the law already accounts for the heightened seriousness of a criminal scheme to defraud multiple victims: The more separate counts of forgery and identity theft a defendant commits, the more convictions he may suffer.

Second, even if the electorate intended to exclude defendants engaged in "broad and wide-ranging efforts to defraud multiple victims," the bare fact that a defendant possessed two separate items of contraband at the same time, without evidence of how and when the defendant came into possession of the contraband, does not itself demonstrate such a connection. If the defendant came to possess the two items at different times through unrelated conduct, the fact that he was found with both items at the same time would not indicate that the items are part of a common scheme. (Cf. *People v. Ewoldt* (1994) 7 Cal.4th 380, 403 ["To establish the existence of a common design or plan, the common features must indicate the existence of a plan rather than a series of similar spontaneous acts . . . ."].)

In this case, the stolen identification information and the counterfeit $50 bill were not shown to be connected in any way except that they were both found in Guerrero's wallet. There was no evidence that Guerrero used the stolen information to obtain the counterfeit bill. Without such evidence, we cannot draw any conclusion beyond the fact that Guerrero happened to possess both items of contraband at the same time.

## CONCLUSION

We hold that the meaningful connection requirement of section 473(b)'s identity theft exception is satisfied only if a defendant convicted of forgery is also convicted of identity theft in the same proceeding and only if one of the offenses facilitated the other. The sole fact that a defendant happened to possess two separate items of contraband at the same time does not demonstrate such a facilitative relationship. Simultaneous possession of contraband, without more, does not raise the same

law enforcement concerns that the electorate intended to address when it excluded defendants "convicted both of forgery and of identity theft" from sentencing relief.  (§ 473(b).)

Because Guerrero had not yet been sentenced at the time Proposition 47 became effective, its ameliorative provisions apply directly to his case.  (*People v. Lara* (2019) 6 Cal.5th 1128, 1135.)  It is uncontested that the only evidence supporting his forgery conviction was the counterfeit $50 bill, which is valued at far less than the $950 threshold below which a forgery conviction must be punished as a misdemeanor.  Guerrero is therefore entitled to reduction of his forgery conviction to a misdemeanor.  Accordingly, we reverse the judgment of the Court of Appeal with instructions to remand to the trial court to reduce Guerrero's forgery conviction to a misdemeanor.

**LIU, J.**

**We Concur:**

**CANTIL-SAKAUYE, C. J.**
**CHIN, J.**
**CORRIGAN, J.**
**CUÉLLAR, J.**
**KRUGER, J.**
**GROBAN, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** People v. Guerrero

_____

**Unpublished Opinion** XXX NP opn. Filed 12/5/18 – 6th Dist.
**Original Appeal**
**Original Proceeding**
**Review Granted**
**Rehearing Granted**


_____

**Opinion No.** S253405
**Date Filed:** April 30, 2020

_____

**Court:**  Superior
**County:**  Santa Clara
**Judge:**  Linda R. Clark


_____

**Counsel:**

Randall Conner, under appointment by the Supreme Court, for Defendant and Appellant.

Kamala Harris and Xavier Becerra, Attorneys General, Jeffrey M. Laurence and Gerald A. Engler, Assistant Attorneys General, Seth K. Schalit, Lisa Ashley Ott, Catherine A. Rivlin and Claudia H. Amaral, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Randall Conner
State Public Defender
717 Washington Street, Second Floor
Oakland, CA 94607
(415) 264-1238

Lisa Ashley Ott
Deputy Attorney General
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102-7004
(415) 510-3839