Filed 2/7/23  P. v. Clotfelter CA1/2
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>BRUCE LEE CLOTFELTER,<br><br>    Defendant and Appellant. | A163460, A165951<br><br>(Napa County<br>Super. Ct. No. CR 182578) |

### INTRODUCTION

This matter comes back to us after we reversed and remanded two separate judgments of conviction against defendant Bruce Lee Clotfelter arising out of two separate jury trials in Napa County.  (*People v. Clotfelter* (Feb. 4, 2021, A155134) [nonpub. opn.] 2021 WL 386536 (*Clotfelter I*); *People v. Clotfelter* (2021) 65 Cal.App.5th 30 (*Clotfelter II*).)  On appeal from the remand proceedings in *Clotfelter I*, defendant now argues (in A163460; *Clotfelter III*) that his aggregate sentence of 75 years to life in prison for convictions of perjury, identity theft, and forgery was in error on three grounds:  his sentence constitutes cruel and unusual punishment; the trial court erroneously believed it was required to impose consecutive sentences; and the trial court failed to recalculate his custody credits.  We conclude that the matter must again be remanded for resentencing.

1

In a separate appeal (A165951) also arising from *Clotfelter I,* and which we consolidated with A163460, Clotfelter appeals from an order denying his post-conviction motion for resentencing (*Clotfelter IV*). Defendant's court-appointed counsel filed a brief asking this court for an independent review of the record under *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*), which applies to direct criminal appeals. Since then, the Supreme Court has explained the procedure that applies when appellate counsel finds no arguable issue on appeal from postconviction matters in *People v. Delgadillo* (2022) 14 Cal.5th 216 (*Delgadillo*). Defendant was informed by appellate counsel and by this court of his right to file supplemental briefing. In part IV of this opinion, we dismiss appeal A165951 as abandoned under *Delgadillo*.

## FACTUAL AND PROCEDURAL BACKGROUND

We rely primarily on our prior opinions in *Clotfelter I, supra,* 2021 WL 386536 and *Clotfelter II, supra,* 65 Cal.5th 30 for the factual and procedural background.

*Brief Overview*

Long before *Clotfelter I and II*, Clotfelter was convicted in 1989 of three counts of committing lewd or lascivious acts upon a child under the age of 14. (§ 288, subd. (a).) He was sentenced to 10 years in state prison and was eventually released in 1995. In 1996, defendant was convicted in federal court of four counts of false impersonation of a military officer, after dressing as a naval fighter pilot and visiting various schools. In 1997, he was adjudicated a sexually violent predator (SVP) and committed to a state hospital for treatment. While in the state hospital, he volunteered to be surgically castrated, a procedure that took place in 2001. In June 2007, defendant was unconditionally released from the state hospital, and subject

to lifetime registration as an SVP.  Upon his release, defendant moved to Napa County.

The facts leading to *Clotfelter I* and *Clotfelter II* begin nearly a decade later, when, during a routine sex offender compliance check and search of defendant's residence in October 2016, Napa police found a Mexican passport in the name of Bruce Clotfelter, and a U.S. passport in the name of Bruce Vail.  Pursuant to a warrant, Napa police seized defendant's computer.  The computer contained altered documents defendant had submitted to the Social Security Administration (SSA) and to the Department of State, as well as invoices purportedly placing his residence in Napa at the same time he was committed to a state hospital as an SVP.  This evidence led defendant to be charged in *Clotfelter I* with numerous felonies including perjury, identity theft and multiple theft counts, he was convicted and sentenced to 300 years in state prison.

Other evidence was seized that showed defendant had formed relationships with three minor boys (two were brothers) and their respective families.  This evidence led defendant to be charged in a second case (*Clotfelter II*) with several sexual offenses.  A jury trial was conducted in *Clotfelter II*, resulting in convictions on all counts and a sentence of 150 years to life in state prison.  We reversed two of the counts in *Clotfelter II* for insufficient evidence and the entire judgment for ineffective assistance of counsel.  (*Clotfelter II, supra*, 65 Cal.App.5th at p. 37.)  We discuss *Clotfelter I* and *Clotfelter II* in more detail below.

### Clotfelter I

In June 2007, defendant settled in Napa County, where he registered as a sex offender with local law enforcement.  (*Clotfelter I, supra,* 2021 WL

3

386536 at *1.) Defendant also applied for Social Security benefits, which were approved under his own name. (*Ibid.*)

About this time, defendant decided to change his name. (*Clotfelter I, supra,* 2021 WL 386536 at *2.) In January 2008, he petitioned the Napa Superior Court to change his name to "Andrew Bruce Vail." (*Ibid.*) That petition was denied. (*Ibid.*) In January of 2009, he filed another petition, this time asking to change his legal name to the one he used for writing, "Dalton Bruce Vail." (*Ibid.*) This petition was also denied. (*Ibid.*)

Defendant then resolved to rename himself: " I looked on the Internet and I just simply searched . . . ways to change your name without the court. And there were a number of publications . . . that you could do it by customary usage. That you simply chose another name and begin using that name and then you can claim that that is your name.' " (*Clotfelter I, supra,* 2021 WL 386536 at *2.)

Defendant already had a Consular Report of Birth Abroad (CRBA), the equivalent of a birth certificate for an American citizen born in another country (in defendant's case, Mexico), issued by the U.S. Department of State. Defendant wrote to that agency asking how to amend his CRBA to his new name. (*Clotfelter I, supra,* 2021 WL 386536 at *2.) He was told he had to prove he had been using the new name for at least five years. (*Ibid.*)

Because defendant was told he had to have a passport before it could be amended with a different name, defendant applied for a passport in his own name. He received it in March 2010. (*Clotfelter I, supra,* 2021 WL 386536 at *2.)

In June of that year, defendant submitted an application to the SSA to have his benefits paid under the name of Dalton Bruce Vail. (*Clotfelter I, supra,* 2021 WL 386536 at *2.) To an SSA employee defendant " 'submitted a

4

court-ordered name change document' " (defendant called it a " 'document that I had created that was entitled Affidavit for Common Law Name Change' "). Based on this bogus "document," SSA accepted defendant's application. (*Ibid.*)

The same thing occurred several months later, allowing defendant to obtain an amended CRBA in the name of Dalton B. Vail from the Department of State. (*Clotfelter I, supra,* 2021 WL 386536 at *2.)

Among the documents defendant admitted submitting was a " 'contribution statement' " from the Grace Church he attended in Napa. (*Clotfelter I, supra,* 2021 WL 386536 at *2.) This document, which was dated January 14, 2005, purported to show that in 2004 (while he was actually in Atascadero State Hospital) Dalton Vail made specified donations to the church. (*Ibid.*)

Another document created by defendant that was submitted with the amended CRBA application was a UPS invoice dated May 15, 2005, purporting to record that Dalton Vail of " 'Vail Enterprises' " paid $11.05 to ship an item from himself to himself in Napa from Orange County. (*Clotfelter I, supra,* 2021 WL 386536 at *2.)

Defendant used the amended CRBA to apply for his California Driver's License to show the name Dalton Vail instead of Bruce Clotfelter. Months later, using the name Dalton Vail, defendant applied for a different type of operator's license; on the application defendant answered " 'No' " to the question: " '[H]ave you applied for a driver's license or identification card in California or another state/county using a different name or number within the past 10 years?' " (*Clotfelter I, supra,* 2021 WL 386536 at *2.)

Defendant took the stand at his trial in *Clotfelter I* and began by admitting his five felony convictions, and the fact that he was an SVP who

5

spent 10 years in state hospitals. He admitted creating and altering documents to escape his criminal history. But he testified he did not change his name to " 'hide from the police' " or avoid the sex offender registration requirements. The name change was not intended to " 'confuse' " anyone. (*Clotfelter I, supra,* 2021 WL 386536 at *3.)

A jury convicted defendant of one count of perjury (Pen. Code, § 118[1] [count 1]); two counts of identity theft—technically the unauthorized use of personal identifying information of another person—(§ 530, subd. (a) [counts 3 & 4]); two counts of document forgery with intent to defraud (§ 470, subd. (d) [counts 5 & 6 ]); and seven counts of grand theft (§ 487, subd. (a) [counts 7-13]).[2] (*Clotfelter I, supra,* 2021 WL 386536 at *1.) The jury also found true allegations that defendant had three prior sex-offense "strike" convictions. (*Ibid.*) The trial court denied defendant's motion to strike one or more of the previous conviction findings pursuant to *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*), and sentenced him to state prison for an aggregate term of 300 years to life. (*Ibid.*)

In our unpublished opinion in *Clotfelter I*, we reversed the seven grand theft convictions (counts 7-13); affirmed the perjury conviction (count 1), the two forgery convictions (counts 5-6), and the two identity theft convictions (counts 3-4); directed the trial court to stay the sentences on the two identity theft convictions pursuant to section 654; and remanded the matter for

---

[1] All further undesignated statutory references are to the Penal Code.

[2] The theft charges consisted of seven separate counts of unlawfully taking " 'more than $950' " which was " 'the property of the Social Security Administration,' " one count for each year from 2010 through 2016, relating to Social Security payments he received. (*Clotfelter I, supra,* 2021 WL 386536 at *3.) For each of these counts, defendant had been sentenced to a Three Strikes sentence of 25 years to life, each to be served consecutively. (*Ibid.*)

resentencing and possible retrial on no more than four of the theft charges.[3] (*Clotfelter I, supra,* 2021 WL 386536 at \*21-22.) We determined at that time that the trial court did not abuse its discretion in denying defendant's *Romero* motion. (*Id.* at \*20.) Finally, we concluded defendant's cruel and unusual punishment claim was premature in light of the fact that his final aggregate sentence would be determined upon remand. (*Id.* at \*22.)

The district attorney elected not to retry defendant on any of the theft charges.

### *Clotfelter II*

In September 2018, a jury convicted defendant of two counts of annoying or molesting a child under the age of 18 (§ 647.6, subd. (c)(2) [counts 1 & 2]), two counts of contacting or communicating with a 14 or 15-year-old child with the intent to commit a sexual offense (§§ 288.3, subd. (a), 288, subd. (c)(1) [counts 3 & 4]), and two counts of contacting or communicating with a child under the age of 14 with the intent to commit a sexual offense (§§ 288.3, subd. (a), 288, subd. (a) [counts 5 & 6]). (*Clotfelter II, supra,* 65 Cal.App.5th at pp. 37-38.)

On appeal, defendant claimed there was insufficient evidence to support his conviction on the counts of annoying or molesting a child under the age if 18 (counts 1 & 2). (*Clotfelter II, supra,* 65 Cal.App.5th at p. 38.) He further argued the entire judgment required reversal due to prejudicial ineffective assistance of counsel that deprived him of a fair trial. (*Ibid.*) This included defense counsel's consistent failure to object to inadmissible expert testimony that defendant had the requisite mental states to commit the

---

[3] We grant defendant's motion to take judicial notice of the appellate record in *Clotfelter I*. (Evid. Code, §§ 452, subd. (d), 459, subd. (a).) On our own motion, we take judicial notice of the appellate record in *Clotfelter II*.

charged crimes and in fact was guilty; failure to object to the admissibility of expert testimony on child sexual abuse accommodation syndrome that was irrelevant and prejudicial; and failure to object to irrelevant and prejudicial testimony about his prior sexual offenses that went well beyond the parameters of Evidence Code section 1108. (*Ibid.*)

In a published opinion, we concluded the evidence was insufficient to establish that defendant's conduct was objectively irritating or disturbing under the statute, and reversed counts 1 and 2. (See § 647.6, subd. (c)(2); *Clotfelter II, supra,* 65 Cal.App.5th at p. 52.) We also determined that trial counsel's deficient performance warranted reversal of the entire judgment. (*Id.* at p. 69.) We remanded for further proceedings on the two counts of contacting or communicating with a 14 or 15-year-old child with the intent to commit a sexual offense (§§ 288.3, subd. (a), 288, subd. (c)(1) [counts 3 & 4]), and the two counts of contacting or communicating with a child under the age of 14 with the intent to commit a sexual offense (§§ 288.3, subd. (a), 288, subd. (a) [counts 5 & 6].) (*Ibid.*)

As we discuss below in *Clotfelter II*, on remand the district attorney elected not to retry the four felony sex offenses; instead defendant pled no contest to one misdemeanor count of sexual battery (§ 243) and to simple felony assault (§ 245), for a sentence of four years, to be served concurrently with the sentence in *Clotfelter I*.

### *Proceedings on Remand*

At a hearing on June 22, 2021, "for remittitur and for more comments" in *Clotfelter I*, the trial court (Hon. Scott R.L. Young)[4] asked defense counsel

---

[4] Different judges presided at the jury trials in *Clotfelter I* (Hon. Diane Price) and *Clotfelter II* (Hon. Mark Boessenecker). And there were two different prosecutors at each trial.

and the prosecutor if the parties would like an indicated sentence. Judge Young had not presided over the trial in *Clotfelter I* or *Clotfelter II,* but advised counsel he had read this court's opinion in *Clotfelter II*, and had read "the sentencing briefs . . . the appellate court ruling . . . [and] portions of the court record" in *Clotfelter I*. The court stated that it "would not be inclined to strike the prior strikes given the overall pattern of conduct." Judge Young also said, "*I see these as mandatory* [*section*] *667(c)[(7)]*[5] *sentences of three consecutive 25 years to life for 75 years to life* with Counts Three and Four [identity theft] being 25 to life on each but stayed pursuant to [section] 654 for a total of 75 to life as it stands at this point." (Italics added.)

The deputy district attorney present in the courtroom stated that if this was the court's indication, the People "would be inclined to proceed to sentencing" and "dismiss the remaining counts on the case that is before the court," referring to *Clotfelter I*. She added, "I think we can deal with the other case [referring to *Clotfelter II*] when it comes back on the remittitur because I don't think that affects this analysis." Defense counsel asked to continue the matter, so defendant (then on Zoom) could be present in person and to learn the prosecution's plans, if any, for *Clotfelter II*. Additionally, he wanted to "do another *Romero* motion, including in that would be the cruel and unusual punishment arguments." The trial court continued the hearing, noting that its indicated sentence would stand "unless there is newer or

---

[5] Section 667, subdivision (c)(7) provides: "If there is a current conviction for more than one serious or violent felony as described in paragraph (6), the court shall impose the sentence for each conviction consecutive to the sentence for any other conviction for which the defendant may be consecutively sentenced in the manner prescribed by law." Because none of Clotfelter's offenses subject to resentencing on remand—forgery, perjury, and identity theft—is a violent felony, the trial court's citation to subdivision (c)(7) was erroneous.

different information." The trial court stated it would not require new briefing, but the court would consider anything submitted by the parties.

*New Sentencing Hearings in Clotfelter I and Clotfelter II*

On August 30, 2021, defendant was resentenced in *Clotfelter I* and *Clotfelter II*. As to the sentence in *Clotfelter I*, defense counsel, referring to "the Romero motion and People [v.] Williams" (apparently a reference to *People v. Williams* (1998) 17 Cal.4th 148), argued that sentencing defendant to 75 years to life for property crimes, none of which constitute serious or violent felonies, fell "way outside the bounds of reason." Defense counsel emphasized that the identity theft and forgery charges were wobblers, meaning they could have been charged as misdemeanors. Further, he described the perjury charge pertaining to the DMV as "a simple check of a box," an apparent reference to the fact that the false statement resulting in Clotfelter's conviction was that he checked a box on a DMV form that he had not applied for a driver's license in California using a different name within the past 10 years. Counsel argued, "The Department of Motor Vehicles was not hurt whatsoever. None of the crimes involved or even hint of violence or even loss of property caused. Essentially no one was hurt, your Honor . . . Mr. Clotfelter's history of criminality is not enough to bring a Draconian punishment of a life term. Life term is not in the bounds of reason. All of Mr. Clotfelter's strikes are from 1988. Put that in perspective. Ronald Reagan was the president when these crimes were committed and when Mr. Clotfelter pled to those charges. [¶] Mr. Clotfelter was also convicted in 1996, in federal court, of four counts of false impersonation of a military officer. No indication that his shenanigans in that case at the time, and as stupid as it was at the time, resulted in any act of molestation or caused any real harm. [¶] In that case, your Honor, there was tons of investigation, and countless

10

children were contacted and talked to, and no allegations whatsoever in 1996 were found that Mr. Clotfelter did anything inappropriate with any children, other than appear as a military officer, which he was not. [¶] Your Honor, prior to being released from the federal conviction, Mr. Clotfelter . . . [was] civilly committed [as a] sexually violent predator and then was civilly committed, your Honor, to Atascadero and other hospitals for over ten years. It was approximately 12 years. And that was after already serving time in 1996 and already serving time in 1988. [¶] While in the hospital, your Honor, Mr. Clotfelter took every class that was available to him and was very honest with his issues with child molestation. Not only did he take every class in the hospitals, your Honor. He also elected—he elected to get surgically castrated, physically castrated, which he did, and then after that, after he was released and determined no longer to be an S.V.P. . . . [¶] . . . [¶] Your Honor, 75 years to life is essentially life without the possibility of parole, given the age of Mr. Clotfelter."

The trial court denied defendant's *Romero* motion and Eighth Amendment claim, stating: "the Court has read and considered probation's pre-sentence report, the briefing submitted by the parties,[6] the appellate decisions from the First Appellate District, and I've really considered these prior strikes and what the appropriate sentence is. [¶] And when I weigh the

---

6 It does not appear from the record before us that either Clotfelter or the district attorney submitted new briefs in connection with the resentencing in *Clotfelter I* now before us, or that a new pre-sentence report was prepared by the probation office in advance of resentencing. We granted the Attorney General's motion to augment the record on appeal with these materials, including Clotfelter's *Romero* motion that, according to the sentencing hearing, included " 'cruel and unusual punishment arguments,' " but neither the superior court clerk nor the parties are in possession of any such documents. As a consequence, we have not seen them.

current offenses, the defendant's background, character, and prospects, the Court doesn't find anything exceptional about the present offense or about the prior convictions that would justify or allow the Court to find that these strikes are outside—that Mr. Clotfelter is outside of the three strikes sentencing scheme. [¶] If I were to look at these offenses, the current offenses alone, whether someone was defrauding the DMV, signing fraudulent checks, or defrauding UPS alone, it might be a simple felony with a probation grant. However, there's been a continuous history of criminality, and the offenses aren't remote, given the incarceration. And this really looks like a larger scheme that's been continuing since the 80's." The court deemed 75 years to life "to be an appropriate sentence, given the continual deception, deceit, underlying child molestation and continuing to attempt to attain access to children, and actually getting into schools in the past and having conduct [*sic*] with these children."

Consistent with its indicated sentence, the trial court imposed "*mandatory consecutive sentences*" of 25 years to life on the perjury count (count 1) and on the two forgery counts (counts 5 & 6). (Italics added.) As to the two identity theft counts (counts 3 & 4), the court imposed and stayed a term of four years per count (two two-year midterms doubled per § 667, subd. (b).)

Later at the same hearing, defendant was resentenced in *Clotfelter II*, pursuant to a negotiated disposition. The prosecution filed an amended information that added two additional counts (7 and 8), and dismissed the counts from *Clotfelter II* that were reversed on appeal but could have been retried. Defendant pleaded no contest to assault with force likely to cause great bodily injury (§ 245, subd. (a)(4)—count 7) and misdemeanor sexual

battery (§ 243—count 8). He received an aggregate sentence of four years, to be served concurrently with his sentence in *Clotfelter I*.

## DISCUSSION

## I. Appeal No. A163460

**A.  Consecutive Sentencing on Remand in Clotfelter I**

On remand, the trial court resentenced defendant to a total state prison term of 75 years to life. The court imposed consecutive 25 years to life "third strike" terms on one count of perjury and two counts of forgery. Defendant argues the trial court erroneously believed it had no discretion to impose concurrent 25 years to life terms on the two forgery counts, referring to those sentences as "mandatory." Acknowledging the absence of an objection by his trial counsel, defendant argues the issue is nevertheless preserved because the sentence imposed was the result of the trial court's erroneous understanding of the Three Strikes law. Alternately, he asserts any forfeiture of this issue resulted from ineffective assistance of counsel. In response, the Attorney General makes three arguments: defendant's claim of sentencing error is forfeited, defendant did not receive ineffective assistance of counsel because if there had been an objection the prosecution might have retried theft charges that were reversed on appeal, and the trial court's stated reasons for its sentencing choice demonstrate it would have imposed consecutive sentences even as a matter of discretion. Notably, the Attorney General does not dispute defendant's argument that the trial court erred in believing consecutive sentences were mandatory on the two forgery counts.

1.  *Defendant's Claim is Not Forfeited.*

As a preliminary matter, the Attorney General argues we should not consider this issue because defendant failed to raise it at sentencing. Even though "a party in a criminal case may not challenge the trial court's

13

discretionary sentencing choices on appeal if that party did not object at trial" (*People v. Gonzalez* (2003) 31 Cal.4th 745, 748; *People v. Scott* (1994) 9 Cal.4th 331, 356), "[a]n appellate court is generally not prohibited from reaching a question that has not been preserved for review by a party." (*People v. Williams, supra,* 17 Cal.4th at p. 161, fn. 6.) A trial court's failure to exercise the discretion vested in it by law comes within the "narrow class of sentencing issues that are reviewable in the absence of a timely objection." (*People v. Leon* (2016) 243 Cal.App.4th 1003, 1023.) " '[W]hen the record shows that the trial court proceeded with sentencing on the . . . assumption it lacked discretion, remand is necessary so that the trial court may have the opportunity to exercise its sentencing discretion at a new sentencing hearing. [Citations.] Defendants are entitled to "sentencing decisions made in the exercise of the 'informed discretion' of the sentencing court," and a court that is unaware of its discretionary authority cannot exercise its informed discretion.' (*People v. Brown* (2007) 147 Cal.App.4th 1213, 1228.)" (*People v. McDaniels* (2018) 22 Cal.App.5th 420, 425.) Accordingly, we address the merits of defendant's claim.[7]

2.   *The Trial Court Failed to Exercise Its Sentencing Discretion in Imposing Consecutive Terms.*

Defendant contends the trial court erroneously concluded that the law *required* consecutive terms on counts 5 and 6. The record affirmatively reflects that the trial court believed consecutive terms were "mandatory," under section 667, using the word "mandatory" repeatedly. The Attorney General does not argue otherwise.

---

[7] By reason of this holding, we do not reach the issue of whether defendant received ineffective assistance of counsel.

14

As our Supreme Court recently explained in *People v. Henderson* (2022) 14 Cal.5th 34 (*Henderson*), "[w]hen the Three Strikes scheme applies, sentences for current qualifying offenses must be ordered to run consecutively to each other if the current offenses occur on separate occasions and do not arise from the same set of operative facts.  (See §§ 667, subd. (c)(6); 1170.12, subd. (a)(6).)[8]  *People v. Lawrence* (2002) 24 Cal.4th 219 [(*Lawrence*)] explained that, for section 667, subdivision (c)(6) purposes, felonies are committed 'on the same occasion' if they were committed within 'close temporal and spatial proximity' of one another.  (*Lawrence,* at p. 233.) Offenses arise 'from the same set of operative facts' when they 'shar[e] common acts or criminal conduct that serves to establish the elements of the current felony offenses of which defendant stands convicted.'  (*Ibid.*)" (*Henderson, supra,* 14 Cal.5th at p. 45.)

On the other hand, "where a sentencing court determines that two or more current felony convictions were either 'committed on the same occasion' or 'aris[e] from the same set of operative facts' . . . consecutive sentencing is not required under the three strikes law, but is permissible in the trial court's sound discretion." (*Lawrence, supra,* 24 Cal.4th at p. 233; *Deloza, supra,* 18 Cal.4th at pp. 590-591.)

---

8 Section 667, subdivision (c)(6)  provides: "(c) Notwithstanding any other law, if a defendant has been convicted of a felony and it has been pled and proved that the defendant has one or more prior serious or violent felony convictions as defined in subdivision (d), the court shall adhere to each of the following: [¶] . . . [¶] (6) If there is a current conviction for more than one felony count not committed on the same occasion, and not arising from the same set of operative facts, the court shall sentence the defendant consecutively on each count pursuant to subdivision (e)."  The corresponding subdivision in section 1170.12, subdivision (a)(6) is virtually identical.  (See *People v. Deloza* (1998) 18 Cal.4th 585, 588, fn. 3 (*Deloza*).)

Here, both of the forgery offenses were committed around September 2010, when defendant created both documents—the UPS receipt (count 5) and the Grace Church contributions statement (count 6)—on his personal computer. Each of these documents was created to make it appear that he resided at a certain address for a certain period of time so he could obtain identification documents. Defendant first argues the "close temporal and spatial proximity" of his crimes compels the conclusion that he committed them on the same occasion within the meaning of the Three Strikes Law. Defendant provides no legal authority, nor can we discover any, which suggests the "same occasion" can be extended to events occurring within the same month.

Regardless of whether the offenses were committed on the same occasion, however, we conclude the two forgery convictions involve the same set of operative facts. As the Attorney General acknowledges on appeal, "Although the forged documents were created at different times and involved different victims, they were submitted collectively to the State Department to obtain a foreign-born birth certificate."

In light of the undisputed facts, we conclude on the record before us that the trial court erred in concluding consecutive sentences on the two forgery convictions were *mandatory*.

3. *Remand is Appropriate.*

Here the trial court proceeded with sentencing assuming that it lacked discretion to sentence defendant to concurrent sentences on the two forgery counts. When a trial court assumes it lacks discretion, remand is ordinarily necessary to give the court the opportunity to exercise that discretion at a new sentencing hearing. The Attorney General argues that we should not remand, because nothing in the record suggests the trial court would have

16

done anything different, and a remand here would be an "idle and unnecessary, if not pointless exercise," citing *People v. Coelho* (2001) 89 Cal.App.4th 861, 889. *Coelho*, however, involved "unique circumstances" (*id.* at p. 888) not present here. There, the trial court twice imposed 10 consecutive sentences, affirmatively indicating it would impose them "even if some were not mandatory," and the record reflected numerous grounds to support consecutive sentences, any one of which would be sufficient by itself. (*Id.* at p. 889.) That is not the case here, where the trial court recognized that "the current offenses alone, whether someone was defrauding the DMV . . . or defrauding UPS alone, it might be a simple felony with a probation grant." Yet, when it came to imposing consecutive or concurrent sentences the court gave no reasons, stating "[t]hese are all consecutive, mandatory consecutive sentences." Accordingly, we conclude the proper disposition is to remand for resentencing.

It is not for this court at this time to instruct the trial court how to resentence on remand. That said, given our familiarity with the records in *Clotfelter I* and *Clotfelter II*, we note the pattern of charging defendant with crimes that have the most severe sentencing exposures, and then trying defendant with a focus on crimes he committed over 30 years ago, notwithstanding that he was later committed to the state hospital, surgically castrated, and subsequently released.

In *Clotfelter I*, as we have noted, defendant was initially charged with 11 felony counts and sentenced to 300 years for non-violent theft-related offenses. We reversed seven theft counts relating to Social Security payments, which alone removed *175 years* from the total sentence based on the way the case had been charged and sentenced. (*Clotfelter I, supra,* 2021 WL 386536 at *21.) On remand, after the prosecution decided *not* to retry

17

defendant on the theft counts, he was sentenced to 75 years to life based on offenses that could have been charged and punished as *misdemeanors*. (See, e.g., *Robert L. v. Superior Court* (2003) 30 Cal.4th 894, 901-902.) The felony perjury count (§ 118, subd. (a)) could have been charged as a misdemeanor under Vehicle Code section 20, which makes it a crime to "knowingly make any false statement or knowingly conceal any material fact in any document filed with the Department of Motor Vehicles." (See *People v. Barrowclough* (1974) 39 Cal.App.3d 50, 55.) The forgeries (§ 470, subd. (d)) and related identity thefts (§ 530.5, subd. (a)) were wobbler offenses, which could have been sentenced as misdemeanors or felonies. (See § 17, subd. (b); *People v. Guerrero* (2020) 9 Cal.5th 244, 248; *People v. Mutter* (2016) 1 Cal.App.5th 429, 434.)[9] On remand in *Clotfelter I*, the trial court remarked twice during the sentencing hearing that "[i]f I were to look at these offenses, the current offenses alone, whether someone was defrauding the DMV,[10] signing fraudulent checks, or defrauding UPS alone, *it might be a simple felony with a probation grant*." (Italics added.) Yet, the court imposed three consecutive terms of 25 years to life.

---

[9] An issue on appeal in *Clotfelter I* was whether as a matter of law defendant should have been charged with violating Vehicle Code section 20, rather than perjury. (*Clotfelter I, supra,* 2021 WL 386536 at *15-16.) Another issue was whether as a matter of law defendant should have been charged with violating Welfare and Institutions Code section 11482 ("Fraudulent Representation or Nondisclosure in Attempt to Obtain or Continue to Receive Aid), a misdemeanor, rather than seven felony theft charges. The fact that we found no errors as a matter of law does not change our observations here.

[10] It should be noted that the DMV charge pertained to perjury, not fraud. (See *Clotfelter I, supra,* 2021 WL 386536 at *15-16.)

In *Clotfelter II*, defendant was charged with six felony sexual offenses. After we reversed the judgments of conviction, Clotfelter pled no contest to *a single misdemeanor and to simple assault*. As we noted in our opinion in *Clotfelter II*, "[m]uch of the evidence at this trial focused on Clotfelter's prior convictions for sex crimes from the 1980's." *(Clotfelter II, supra*, 65 Cal.App.5th at p. 69.) Indeed, the prosecution "led off the first two days of trial testimony by presenting six witnesses who testified about Clotfelter's prior crimes from in the 1980's." (*Id.* at p. 44.) The first witness was an expert in child sexual abuse accommodation syndrome (CSAAS), who gave testimony that formed a basis for our holding that defense counsel rendered ineffective assistance of counsel by failing to object to its admission.[11] (*Ibid.*) "After that, the next five witnesses testified about Clotfelter's sexual offenses in the 1980's." (*Ibid.*) In reversing the conviction for ineffective assistance of counsel, we wrote that "the jury was bombarded with" inflammatory and irrelevant testimony. (*Id.* at p. 67.)[12] In the end, the prosecution chose not to retry the case, and, as we have noted, let defendant plead to a misdemeanor

---

[11] As we wrote: "The CSAAS testimony was not relevant with respect to the evidence concerning the victims of Clotfelter's crimes in the 1980's. It was undisputed that Clotfelter committed these prior offenses, there was no testimony that those victims delayed reporting or recanted, and Clotfelter did not question their credibility at trial. And as to the underlying charges in this case, it is not at all apparent that the CSAAS testimony was relevant." (*Clotfelter II, supra,* 65 Cal.App.5th at p. 64.)

[12] As we wrote, "[w]e assume for purposes of our analysis that some of the Evidence Code section 1108 evidence of Clotfelter's prior crimes was admissible. And in fact, the jury heard voluminous evidence about Clotfelter's prior crimes from the 1980's mostly from his victims. But there was so much more. The unobjected to testimony [described in the opinion] was highly inflammatory; it went *well* beyond the underlying facts of the prior crimes, which had occurred 30 years ago and long before Clotfelter's surgical castration." (*Clotfelter II, supra,* 65 Cal.App.5th at p. 67.)

sexual battery charge and simple assault. The original 150 years to life in state prison sentence became a four-year concurrent sentence.

We by no means turn a blind eye to the seriousness of defendant's prior convictions for sex crimes in the 1980's. Or to the fact that defendant stands convicted of crimes even after our reversals and remands in *Clotfelter I* and *Clotfelter II* that expose him to time in prison even without the application of the three strikes law.[13] On remand, the trial court will have the opportunity to resentence defendant in light of this opinion.[14] At that time, defendant will be free to renew or make any motions he wishes, including a *Romero* motion.

## B.     Cruel and/or Unusual Punishment

Defendant contends his aggregate term of 75 years to life violates the state and federal constitutional prohibitions against cruel and unusual punishment. Because we are remanding to the trial court to exercise its discretion in resentencing, defendant's final aggregate sentence is unknown at this time, making a cruel and/or unusual punishment analysis impossible.

When we were last presented with the issue of cruel and/or unusual punishment in *Clotfelter I*, defendant's sentence was 300 years in state

---

[13] At the resentencing in *Clotfelter I*, defense counsel noted that if the *Romero* motion was granted as to two strikes, Clotfelter could still be sentenced to 10 years, eight months on the remaining charges in that case.

[14] In that regard, we note that although the trial court suggested that the triggering offenses in *Clotfelter I* were part of defendant's plan to gain access to children, we are aware of no evidence to support this accusation. In *Clotfelter II*, the prosecution that also arose after the same search that resulted in the *Clotfelter I* prosecution, there was no evidence that defendant concealed his true identity or his status as a registered sex offender when he contacted the minors and their families. (See, e.g., *Clotfelter II, supra,* 65 Cal.App.5th at pp. 40, 42, 49.)

prison.  We refrained from resolving the issue at the time because the case was still in flux.  More than half of the total sentence (175 years) had been removed as the result of our determination.  The length of Clotfelter's current sentence in light of the prosecutions and outcomes in *Clotfelter I* and *II* is still a matter of legitimate concern, all of which may be raised by defendant in the resentencing that will follow this remand.

## C.     Post-Sentence Custody Credits

Defendant contends the trial court erred in failing to recalculate defendant's post-sentence custody credits on remand.  The Attorney General concedes the error, and we agree with the parties.

"When . . . an appellate remand results in modification of a felony sentence during the term of imprisonment, the trial court must calculate the *actual time* the defendant has already served and credit that time against the 'subsequent sentence.' " (*People v. Buckhalter* (2001) 26 Cal.4th 20, 23 (*Buckhalter*); *In re Martinez* (2003) 30 Cal.4th 29, 31 [applying *Buckhalter* to resentencing after reversal of conviction]; see also § 2900.1 [when a sentence is modified while being served, the time already served "shall be credited upon any subsequent sentence [the defendant] may receive upon a new commitment for the same criminal act or acts"].)

Here, the trial court gave defendant the same credit award he received with his original sentence and neglected to recalculate his actual custody credits.  Defendant is entitled to all of the days he spent in custody from the date of his original sentencing (August 14, 2018) through the date of the amended abstract of judgment (September 10, 2021).  (See *Buckhalter, supra,* 26 Cal.4th at p. 37.)  The trial court is directed to recalculate defendant's post-sentence custody credits at the time of resentencing.

## II. Appeal No. A165951

On August 26, 2022, after briefing in this appeal (A163640) was complete, Clotfelter filed a motion for constructive filing of a late notice of appeal from a May 12, 2022 order denying his motion to recall his sentence in *Clotfelter I* and to resentence him in accordance with Senate Bill No. 81 (2021-2022 Reg. Sess.) (Senate Bill 81), which amended section 1385.[15]  Over the Attorney General's opposition, we granted the motion, and consolidated Clotfelter's latest appeal (A165951) with the one then pending (A163640). Subsequently, Clotfelter's court appointed counsel filed a no issues brief and asked this court for an independent review of the record pursuant to *Wende, supra,* 25 Cal.3d 436.)  Appellate counsel advised Clotfelter that he had the right to file a supplemental brief, but he did not file one.

Since the completion of the briefing in A165951, our Supreme Court decided *Delgadillo, supra*, 14 Cal.5th 216 on December 19, 2022.  *Delgadillo* holds that when appointed counsel determines that an appeal from an order

---

[15] Senate Bill 81 became effective on January 1, 2022, and amended section 1385 "to specify factors that the trial court must consider when deciding whether to strike enhancements from a defendant's sentence in the interest of justice." (*People v. Sek* (2022) 74 Cal.App.5th 657, 674; see Stats. 2021, ch. 721, § 1.)  Section 1385, subdivision (c) now provides:  (1) Notwithstanding any other law, the court shall dismiss an *enhancement* if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute.  [¶] (2) In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances . . . are present.  Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the *enhancement*, unless the court finds that dismissal of the enhancement would endanger public safety. . . . [¶] . . . [¶] (7) This subdivision shall apply to sentencings occurring after January 1, 2022."  (Italics added.)

22

denying postconviction relief lacks arguable merit, "*Wende* procedures are not constitutionally compelled." (*Delgadillo, supra,* 14 Cal.5th at p. 233.) However, "[w]hen appointed counsel submits notice that such an appeal lacks arguable merit, the Court of Appeal should provide notice to the defendant that counsel was unable to find any arguable issues; the defendant may file a supplemental brief or letter raising any argument the defendant wishes the court to consider; and if no such supplemental brief or letter is timely filed, the court may dismiss the appeal as abandoned." (*Id.* at p. 222.) "If the appeal is dismissed as abandoned, the Court of Appeal does not need to write an opinion but should notify the defendant when it dismisses the matter." (*Ibid.*)

On January 4, 2023, we gave Clotfelter *Delgadillo* notice, advising him that this court might dismiss the appeal as abandoned if he failed to file a supplemental brief. As Clotfelter has not filed any such supplemental brief, we dismiss the appeal.[16]

---

[16] Although Clotfelter has not filed a supplemental brief, *Delgadillo* does not prohibit us from independently reviewing the record. (*Delgadillo, supra*, 14 Cal.5th at p. 232 ["[w]hile it is wholly within the court's discretion, the Court of Appeal is not barred from conducting its own independent review of the record"].)

While amended section 1385 addresses "enhancements," the "Three Strikes law is a penalty provision, not an enhancement. It is not an enhancement because it does not add an additional term of imprisonment to the base term" (*People v. Williams* (2014) 227 Cal.App.4th 733, 744). Instead, the "Three Strikes law is a separate sentencing scheme. As the court explained in *Romero*: 'The Three Strikes law, when applicable, takes the place of whatever law would otherwise determine a defendant's sentence for the current offense. (*Romero, supra,* 13 Cal.4th at p. 524.)" (*Henderson, supra,* 14 Cal.5th at p. 43.) Thus, by its plain language, amended section 1385 does not apply to Clotfelter's sentence, which includes no enhancements.

## DISPOSITION

In case No. A163460, the matter is remanded for resentencing consistent with this opinion. Pursuant to the full resentencing rule, the court may revisit all of its sentencing choices. (*People v. Valenzuela* (2019) 7 Cal.5th 415, 424-425; *People v. Buycks* (2018) 5 Cal.5th 857, 893.) At the time of resentencing, the trial court is directed to recalculate defendant's custody credits pursuant to *Buckhalter, supra,* 26 Cal.4th 20.) In all other respects, the judgment is affirmed.

In case No. A165951, we dismiss the appeal.

_____

Miller, J.

WE CONCUR:


_____

Richman, Acting P.J.


_____

Markman, J.[*]


A163460, A165951, *People v. Clotfelter*

_____

[*] Judge of the Alameda Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.